MARY LOUISE YATES; DONOVAN CHARLES STONER AND LYNN LEON HUFFMAN, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 17288

March 31, 1987                                    734 P.2d 1252

*David G. Parraguirre,* Public Defender, *Jane G. McKenna,* Chief Appellate Deputy Public Defender, Washoe County, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, *Timothy G. Randolph,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

This case is about prosecutorial misconduct. Appellants claim that the District Attorney of Washoe County was guilty of misconduct of such magnitude as to deny them a fair trial. There is

no question about the presence of multiple acts of unprofessional conduct in this case, the question is whether in the particular case justice requires us to reverse and send the case back for retrial.

There is pervasive and admitted prosecutorial misconduct throughout this case; however, because the defendants failed to object to the prosecutor's improper statements to the jury and, more importantly, because of the overwhelming evidence of guilt in this case, we have decided to affirm the conviction.

What is before us today is not a new problem. As far back as 1909 this court observed that

> [i]t seems to be a peculiar trait and ambition of some prosecuting attorneys, carried away through misguided zeal, to overprove their case when a conviction is otherwise certain, and to exert their skill and ingenuity in seeing how far they can trespass on the verge of error, and, generally, in doing so, trespass upon the rights of the accused, thus causing the necessity of courts of last resort to reverse causes and order new trials, to the expense and detriment of the commonwealth and all concerned.

State v. Rodriquez, 31 Nev. 342, 347 (1909).

Although, as said, this court of last resort is not going to reverse this case and order a new trial "to the expense and detriment of the commonwealth and all concerned," we do feel constrained to renew the admonition given in *Rodriquez* almost eighty years ago:

> Prosecuting attorneys, unfortunately, too often forget, in their zeal to secure convictions, that they have a duty to perform equally as sacred to the accused as to the state they are employed to represent, and that is to see that the accused has the fair and impartial trial guaranteed every person by our Constitution, no matter how lowly he may be, or degrading the character of the offense charged, and that it is equally as reprehensible for prosecuting attorneys to violate their oath as an attorney and officer of the court in this respect, as they are censurable if they allow the guilty to escape the trial and punishment provided by law.

*Id.*

The district attorney in our criminal justice system has a special and awesome responsibility, for he represents not just an ordinary party to a controversy; rather, he represents a democratic government which must govern impartially and which must have as its predominant interest in criminal cases not that it should *win* a case, but that justice should be done. As a representative of the state the district attorney is "in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute

with earnestness and vigor—indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 55 S.Ct. 629, 633 (1935).

At the beginning of trial, during jury selection, the district attorney asked a juror, in the presence of the jury panel: "In anything that I ever said when I was speaking at Reed High School or anywhere else that you're aware of, did you ever get the feeling at any time that I would ever wilfully and knowingly prosecute a case I didn't believe in?" This question falls short of being a blatant statement that the district attorney only prosecutes guilty people. Still, the trial judge saw this question as being "very close to expressing [the prosecutor's] personal belief in the merits of [his] side of the case," even though he did not consider this to "be serious enough to justify granting a mistrial."

[Headnotes 1, 2]

We agree that at this stage the district attorney's suggestion that he only prosecutes cases that he "believes in," although improper, did not warrant a mistrial. The prosecutor may have been "seeing how far [he could] trespass on the verge of error," *Rodriquez,* above, and although the conduct may not require reversal under the particular circumstances of this case, it was, as admitted during oral argument by the state, an improper remark.[1]

Any expression of opinion on the guilt of an accused is a violation of prosecutorial ethics. McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984); *see* ABA Standards for Criminal Justice, The Prosecution Function, Standard 3-5.8(b) (2nd ed. 1982)[2]; *see also* ABA Model Code of Professional Responsibility, DR 7-106(c)(4) (1980).[3]

---

[1]The state argues that this question was "invited" by defense questioning about the District Attorney asking if the jurors thought that because Mr. Lane said something was true, it must be true and if they could conceive of a situation in which he might prosecute a case in which the proper verdict was not guilty rather than guilty. Such questions do not invite the improper suggestion that Mr. Lane prosecutes only when he "believes in" a case, that is, he has reached a conclusion or determination that the accused is guilty. The issue here, however, is "not the prosecutor's license to make improper arguments, but whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the jury." United States v. Young, 470 U.S. 1, 12 (1985), *citing* Lawn v. United States, 355 U.S. 339 (1958). We hold here that unfair prejudice did not result.

[2]Standard 3-5.8(b) and (c) state in pertinent part:

5.8 *Argument to the jury.*

. . . .

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

[3]The Model Code states in pertinent part:

The reason that such expressions cannot be tolerated has been expressed recently by the United States Supreme Court:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.[4]

The second item of professional misconduct appearing in the record is the District Attorney's expression, during final argument, of his own disbelief of the testimony of expert defense witness John A. Monagin, M.D. He told the jury that the medical doctor had violated his "oath to God." *See* note 2, above.

The third item of unprofessional conduct is the District Attorney's continued abuse of Dr. Monagin[5] during final argument in which he characterized the doctor's testimony as "melarky," saying that he "crawl[ed] up on the witness stand" and that his testimony was "outright fraud."[6] The District Attorney may

---

DR 7-106 Trial Conduct.

. . . .
  (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

. . . .
  (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

(Footnote omitted).

[4]United States v. Young, 470 U.S. at 18-19.

[5]Dr. Monagin's qualifications include the following: He is a medical doctor, with a specialty in psychiatry, attended Duke University, Baylor College of Medicine, did a medical internship at Saint Joseph's Hospital in Houston, was a psychiatrist with the Reno VA Medical Center from 1980 to 1982, and was appointed to the adjunct section of the medical school, where he lectured on mood disorders, stress disorders and psychopharmacology.

[6][I]t does not follow that an attorney may so conduct himself without fear of discipline. Indeed the oath taken by an attorney licensed to practice in Nevada states in part "that I will abstain from all offensive personalities and advance no fact prejudicial to the honor or *reputation*

argue the evidence and inferences before the jury. He may not heap verbal abuse on a witness nor characterize a witness as a perjurer or a fraud.

Such characterizations transform the prosecutor into an unsworn witness on the issue of the witnesses credibility and are clearly improper. McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984); *see* Commonwealth v. Potter, 285 A.2d 492 (Pa. 1971); United States v. Drummond, 481 F.2d 62, 64 (2d Cir. 1973).

The next item coming to our attention is the District Attorney's degrading of defense counsel in front of the jury by saying that defense counsel was acting in "violation of all the ethics of any attorney" and that he ought to be held in contempt. Insofar as we can determine from an examination of the record, these remarks by the prosecutor were totally without justification.

The use of these kinds of remarks, these kinds of "foul blows" and this kind of behavior on the part of a prosecuting office is in all respects a "no-win" approach to trial advocacy. "If the state has a strong case, it is not necessary, and if it was a close one, such misconduct is gross injustice to the defendant." State v. Cyty, 50 Nev. 256, 259, 256 P. 793, 794 (1927). We earnestly hope that a stop can be put to these antics.

We do not despair of finding an effective remedy for prosecutorial misconduct merely because we decline to reverse cases of this nature. We do not intend this opinion to go as an unheeded condemnation. This kind of activity can be stopped in other ways. Trial judges can take disciplinary action on the spot, and this court has the power to discipline all attorneys who violate ethical standards.

The following measures are suggested in United States v. Modica, 663 F.2d 1173, 1184-85 (2d Cir. 1981), *cert. denied*, 456 U.S. 989 (1982):

> The district judge is in an especially well-suited position to control the overall tenor of the trial. He can order the offending statements to cease and can instruct the jury in such a manner as to erase the taint of improper remarks that are made. The ABA Standards for Criminal Justice recognize that "[i]t is the responsibility of the [trial] court to ensure that final argument to the jury is kept within proper, accepted

*of a party or witness,* unless required by the justice of the cause with which I am charged . . ."

Bull v. McCuskey, 96 Nev. 706, 712, 615 P.2d 957, 962 (1980) (emphasis added).

bounds. ABA Standard 3-5.8. The trial judge can interrupt to anticipate and cut off an improper line of argument. Once the offending remarks are made, the judge can strike them and forcefully instruct the jury as to their inappropriateness. If persuaded in a rare case that irreparable prejudice has occurred, the court retains the option of granting a motion for a mistrial.

Beyond these traditional trial-conduct remedies, the court has a range of remedies that may, in appropriate circumstances, be directed specifically at the attorney. Initially, the court may consider a reprimand, delivered on the spot or deferred until the jury has been excused from the courtroom. Flagrant conduct, in violation of a court order to desist, may warrant contempt penalties. If the conduct has occurred on prior occasions, the court may wish to give serious consideration to a formal reference to the appropriate local grievance committee to assess the need for disciplinary proceedings. Alternatively, persistent misconduct may warrant action by the court itself to initiate proceedings to determine the appropriateness of a suspension from practice before the District Court. We suspect that the message of a single 30-day suspension from practice would be far clearer than the disapproving remarks in a score of appellate opinions.

Despite the regrettable incidents of prosecutorial misconduct during this trial, in view of the overwhelming evidence that the defendants were guilty as perpetrators or principals in this brutal murder, reversal is not justified. All three defendants admitted their complicity in the crime. The jury was presented with overwhelming evidence of the defendants' involvement in the planning, execution and cover-up of the murder. Evidence of Donovan Stoner's premeditation was sufficient to sustain his, and thereby Mary Yates' and Lynn Huffman's, conviction of first degree murder. When a guilty verdict is free from doubt, even aggravated prosecutorial remarks will not justify reversal. Dearman v. State, 93 Nev. 364, 566 P.2d 407 (1977); Jackson v. State, 93 Nev. 28, 559 P.2d 825 (1977).[7]

---

[7]This court is being increasingly faced with claims of prosecutorial misconduct which are clearly contrary to expressed precedent. Incidents of abuses are too frequent to catalogue; and, notwithstanding reiteration of existing guidelines, this court's decrying the increasing number of cases appealed on these grounds and our threatening to impose sanctions if the practice continues, we still see these cases in increasing numbers. It is time that this kind of conduct be stopped.

We do not see reversal of convictions as an appropriate or useful way to adjudicate prosecutorial misconduct. Reversal may prejudice society more than it does the prosecutor.

We hear prosecutors complain that they are being singled out among other

We have considered the other issues raised on appeal and find them to be without merit.[8] The judgments of the district court are affirmed.

GUNDERSON, C. J., and STEFFEN, YOUNG, and MOWBRAY, JJ., concur.

---

advocates for undeserved chastisement. It is apparent, however, that it is inherent in the criminal justice process that the conduct of prosecutors come to judicial attention more frequently than, say, that of defense attorneys. Instead of being dealt with by conventional grievance processes, prosecutors' unethical conduct ordinarily becomes part of the law of the case when a defendant appeals conviction. Unethical conduct on the part of defense lawyers would ordinarily be dealt with as a grievance, involving administration fact-finding and imposition of sanctions carried out privately and rarely becoming a matter of appellate cognizance. Unethical actions by prosecutors, on the other hand, become the subject of briefing and argument by both sides in the appellate courts and become a part of the record on appeal.

Ordinarily, the state does not appeal an issue of defense misconduct so that defense conduct rarely becomes a part of the appellate record. We do note, however, that adjudication on our part that prosecutors have engaged in unethical conduct has had very little, if any, deterrent effect on prosecutors' actions.

We have reached the point where we can no longer look at this problem in terms of isolated examples of "understandable, if inexcusable overzealousness in the heat of trial." *See* Jackson v. State, 421 So.2d 15, 16 (Fla.Dist. Ct.App. 1982). It is obvious that this conduct should not be tolerated. It is just as obvious, and just as distressing, that our prior efforts to reduce this practice have proven to be inadequate. *United States v. Modica,* 663 F.2d 1173 at 1182 (2d Cir. N.Y. 1981).

[8]Appellant Huffman contends that the district court unduly prejudiced his defense by limiting his cross-examination to one of two extra-judicial statements given to detectives between May 27 and May 28. We find sufficient evidence on the record from which the district court could have determined the statements were separate.

Although not raised on appeal, we find any possible limitation of appellant Huffman's right to cross-examine Detective Wiskerchen regarding the May 27 statement not prejudicial to Huffman's own substantial rights. The defendant's May 27 statement appears cumulative to that which he offered over seven hours later on May 28. Further, the unadmitted statement would not have served to exculpate Huffman from overwhelming evidence of his participation as a principal in the felony murder of Jeanne Yates. The district court allowed sufficient opportunity for Huffman to explain any inconsistency between the two statements and to impeach the testimony of Detective Wiskerchen. Miranda v. State, 101 Nev. 562, 707 P.2d 1121 (1985).

1. ADMINISTRATIVE LAW AND PROCEDURE; HOSPITALS.
    Health care provider had no adequate remedy at law and was entitled to judicial review of administrative decision that its acquisition of magnetic resonance imaging machine was subject to "certificate of need" approval, as there is no statutory provision for determination that party is not subject to such approval. NRS 439A.010 et seq.

2. HOSPITALS.
    Health care provider's mobile facility for providing diagnostic services using magnetic resonance imaging machine was "health facility" subject to "certificate of need" approval under statute. NRS 439A.010 et seq., 439A.015.