MONTE RAY ROSS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 20785

December 27, 1990      803 P.2d 1104

*Hager & Mausert,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; and *Jack T. Bullock,* District Attorney and *Robert Griffy,* Deputy District Attorney, Humboldt County, for Respondent.

## OPINION

*Per Curiam:*

A jury found appellant Monte Ray Ross guilty of driving under the influence of intoxicating liquor, third offense, a felony.[1] Our review of the record persuades us that Ross was denied a fair trial; we therefore reverse.

On November 6, 1988, Deputy Sheriff Phillip Bennett of the Humboldt County Sheriff's Department received a citizen's report of a possible accident. Officer Bennett arrived at the accident scene at approximately 1:30 a.m. and noticed a white Toyota pickup truck parked on the wrong side of the two-lane road. The pickup was facing oncoming traffic and was parked down a sloping shoulder some fifteen to eighteen feet off the road. Bennett found Ross behind the steering wheel of the vehicle. The vehicle's lights were on and the engine was running.

Officer Bennett smelled an odor similar to alcohol and noted

---

[1]Ross was sentenced to three years in Nevada State Prison and ordered to pay a $2,000 fine.

that Ross's speech was "slurred." Ross's motor ability was so impaired that he was unable to stand or walk. A police check on Ross's social security number revealed that his license was revoked for prior alcohol-related driving offenses. Ross was placed under arrest. A blood alcohol test revealed that Ross's blood alcohol content was .275[2] percent by weight at the time of withdrawal.

During trial, the defense called a total of only three witnesses. A central defense theory turned on the testimony of appellant's wife, Lorraine Ross. Appellant did not testify at his trial.

Mrs. Ross testified that she, and not her husband, had driven the vehicle that night. According to her testimony, a phone call from a friend alerted her that her husband was intoxicated at a nearby bar, thus prompting her to walk three miles in the dark to rescue him. On the way home, the couple argued. Ross demanded to be returned to the bar. Mrs. Ross then angrily turned the pickup around, causing it to become stuck off the road. She testified that they tried unsuccessfully to push the pickup back onto the road. She left to walk back home and Ross supposedly started back to the bar, but was forced by the cold temperature to return to the car to warm himself.

Ross contends that prosecutorial misconduct grievously prejudiced his defense. During closing argument, the prosecutor directed the jury's attention to the fact that the friend who allegedly telephoned Lorraine Ross did not testify, and called upon the defense attorney to "explain why he [the friend] didn't come forward." Ross argues that the particularly damaging statements by the prosecutor occurred when the prosecutor characterized Lorraine Ross as a liar and further emphasized that couples in their type of situation usually come up with the story that the wife or girlfriend was driving.[3] The inference, of course, is that

---

[2]NRS 484.379 states in pertinent part:

1. It is unlawful for any person who:

(b) Has 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

[3]The prosecutor stated to the jury in closing argument:

I'm telling you here now this woman was lying for her husband. She never came forward and told anybody. This is where we hear it, right here for the first time, and it doesn't make sense that she didn't come forward.

. . . .

. . . They know that the police didn't actually see him driving, so they were going to come up and say, "somebody else was driving," and try to explain away how he got there without driving. They come up with some story, and it's usually the girlfriend or the wife who is the one supposedly driving when they come up with that story. That's why we heard that testimony.

the prosecutor was speaking from experience as to what was "usual" in this type of case.

The Constitution guarantees a fair trial, not necessarily a perfect one. Lutwak v. United States, 344 U.S. 604, 619 (1953). Nevertheless, previous decisions of this court clearly state that it is improper argument for counsel to characterize a witness as a liar. Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155, (1988). It is also improper for a prosecutor to interject his personal opinion in closing argument. Yates v. State, 103 Nev. 200, 203, 734 P.2d 1252, 1254 (1987); Aesoph v. State, 102 Nev. 316, 322, 721 P.2d 379, 383 (1986); Collier v. State, 101 Nev. 473, 480, 705 P.2d 1126, 1130 (1985).

It is generally also outside the boundaries of proper argument to comment on a defendant's failure to call a witness. Colley v. State, 98 Nev. 14, 16, 639 P.2d 530, 532 (1982). This can be viewed as impermissibly shifting the burden of proof to the defense. Barron v. State, 105 Nev. 767, 778, 783 P.2d 444, 451 (1989). Such shifting is improper because "[i]t suggests to the jury that it was the defendant's burden to produce proof by explaining the absence of witnesses or evidence. This implication is clearly inaccurate." *Id.* (citing Mullaney v. Wilbur, 421 U.S. 684 (1975); In re Winship, 397 U.S. 358 (1970)).

A prosecutor may demonstrate to a jury through inferences from the record that a defense witness's testimony is palpably untrue. It was within the parameters of proper argument to point out to the jury that Lorraine Ross's testimony might be incredible. For example, it could be argued that she had a motive to lie, she waited until trial to come forward with a defense instead of going directly to the police, she left her four children alone in the middle of the night, and she walked three miles by herself at night along semi-deserted roads.

With the statement, "I'm telling you now this woman is lying for her husband," and that, in effect, it is usual for couples in this type of situation to concoct this kind of a story, the prosecutor did more than permissibly demonstrate bias on the part of a witness. His statement was an improper conclusion to permissible argument. Explaining to the jury *why* she might be lying is permissible argument. A prosecutorial statement that Lorraine Ross *is* a liar, both as a fact and as a conclusion, and that her situation

provided assurance that she is a liar, is not proper argument. The cumulative impact of these statements had the practical effect of shifting the burden of proof on the defendant, a burden which lies exclusively with the State.

Defense counsel neither objected to the prosecutor's statements nor asked for a bench conference and a curative instruction to the jury. As a general rule, the failure to object or request an instruction will preclude review by this court. *See* Mercado v. State, 100 Nev. 535, 538, 688 P.2d 305, 307 (1984); Garner v. State, 78 Nev. 366, 372-73, 374 P.2d 525, 529 (1962).

There is, however, an exception to the general rule in instances where "the errors are patently prejudicial and require the court to intervene *sua sponte* to protect the defendant's right to a fair trial." Downey v. State, 103 Nev. 4, 7, 731 P.2d 350, 352 (1987).

In order for error to be reversible, it must be prejudicial and not merely harmless. *See* Garner v. State, 78 Nev. 366, 374, 374 P.2d 525, 529 (1962). The test is whether "without reservation . . . the verdict would have been the same in the absence of error." Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1156 (1988). The guilty verdict must be free from doubt. Flanagan v. State, 104 Nev. 105, 107, 754 P.2d 836, 837 (1988); Yates v. State, 103 Nev. 200, 206, 734 P.2d 1252, 1256 (1987).

In their totality, the prosecutor's remarks unfairly undermined the defense theory by improperly impugning a critical defense witness. It can be inferred that these remarks were fresh in the jurors' minds as they entered the jury room and commenced their deliberations. In addition, the imprimatur of the prosecutor's office added force and legitimacy to the prosecutor's argument to the jury.[4] It is the jury's function to determine guilt or innocence. Absent these errors, it cannot be said with sufficient confidence that the jury would have reached the same verdict. The errors were not harmless beyond a reasonable doubt. Neal v. State, 106 Nev. 23, 25-26, 787 P.2d 764, 765 (1990); Aesoph v. State, 102 Nev. 316, 322, 721 P.2d 379, 383 (1986); Moore v. State, 96 Nev. 220, 225, 607 P.2d 105, 108 (1980). The prosecutor's comments ultimately deprived Ross of a fundamentally fair trial. *See* Darden v. Wainwright, 477 U.S. 168, *reh'g denied*, 479 U.S. 911 (1986).

---

[4]The responsibility of a prosecutor in a criminal case is to secure justice within the context of a fair trial. Because of a prosecutor's position, "improper suggestions, insinuations and, especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Berger v. United States, 295 U.S. 78, 88 (1934).

Because of our determination that Ross is entitled to a new trial for the reasons previously mentioned, it is unnecessary to reach other issues raised by appellant. The judgment entered below is reversed and the matter is remanded to the district court for a new trial.