Rose, J.,
dissenting:
The district court committed reversible error when it refused to sever the trial of the sexual assault and kidnapping charges from the solicitation of murder charge that occurred six months later. *675 Because of this error, the refusal to give Honeycutt’s consent instruction, and the prosecutorial misconduct that occurred during trial, I conclude that reversal is mandated.

Severance

Under NRS 173.115(2), a district court can join charges that involve acts close in time and relate to a defendant’s common scheme, plan or motive, or otherwise are tied to each other. But any prejudice the joinder would create should always be considered, and joinder of charges should be denied if it would be prejudicial to the defendant.[1] Failure to sever when clear prejudice is shown requires reversal of any conviction obtained.[2]
The crimes of sexual assault and kidnapping are completely different from the solicitation of murder charge that occurred six months later. They are not part of a common plan or scheme, the percipient witnesses are different, and they are connected only by one single thread — the victim is the same. We have held that two incidents involving social drinks at a particular bar followed by alleged sexual assaults could not be joined because forty-five days separated the incidents.[3] Based on this, I conclude that severance of the solicitation of murder charge against Honeycutt was mandated because this charge was not closely related to and did not involve a common course or scheme as the sexual assault and kidnapping charges.
But the greater problem created by the joinder of the sexual assault and kidnapping charges with the solicitation of murder charge was that Honeycutt was automatically forced to surrender his right to remain silent. Honeycutt had already gone to trial on the sexual assault and kidnapping charges, the jury could not reach a verdict, and a mistrial was declared. At trial, he had testified on his own behalf, thereby forever waiving his right to remain silent on these charges.[4] The sexual assault and kidnapping charges were set for retrial. Joining the solicitation of murder charge with the sexual assault and kidnapping charges to which Honeycutt had already waived his right to remain silent, created the impossible situation where Honeycutt had waived his right to remain silent to some of the charges but had not to others. The logical solution was to sever the charges for trial, but the district court rejected Honeycutt’s request to sever.
At retrial, Honeycutt took the stand and testified that the sexual acts were consensual, but then tried to remain silent and not *676 testify about the solicitation charges. The district court directed Honeycutt to testify to the facts of the solicitation charge. As the district court stated:
Mr. Honeycutt, you’ve waived any rights you have as to answering or not answering by taking the stand and testifying on your behalf. You are obligated under the law to answer the questions truthfully that have been presented to you. This is not a separate trial. This is one trial. Both issues are before the Court, so you have an obligation to answer those. If you choose to not answer those, then the Court is then obligated to strike your testimony, sir.
What the district court did not grasp was that Honeycutt’s Fifth Amendment right to remain silent about the sexual assault charges was forever waived when he took the stand in the first trial, and his right remained waived in the second trial whether he testified or not.[5] The prosecution could have called him to the stand as an adverse witness to testify about the sexual assaults; or if Honeycutt refused to testify, the prosecutor could have had his prior testimony at the first trial read into the record.[6] The majority endorses, without the citation of any authority, this unique procedure of restoring an accused’s privilege against self-incrimination after it has been previously waived.
The majority cites United States v. Dixon,[7] where the Seventh Circuit Court of Appeals stated that a severance is not required every time a defendant wants to testify to one charge and not to others. I heartily agree with this general proposition, but the unique facts of this case must be considered. In Dixon, all charges were being brought to trial for the first time — the defendant had not already waived his Fifth Amendment right as to some of the charges.[8] The unique situation in this case makes the general proposition stated in Dixon inapplicable.
We have held that any substantial detriment to the defendant brought about by the joinder of charges requires severance of the charges, including the denial of the ability to introduce evidence critical to the defendant’s defense.[9] The majority declares that no “unfairness” or detriment to Honeycutt has been demonstrated. I respectfully disagree and our prior case law does also. Compelling a defendant to surrender his Fifth Amendment right against self-incrimination seems like a pretty big detriment to me.
Even assuming that Honeycutt did not waive his right against self-incrimination at the first trial as the district court believed, I *677 conclude that joinder of the charges was prejudicial to Honeycutt. In order to meet the charges of sexual assault and kidnapping, it was imperative that Honeycutt testify that the sexual acts were consensual. He had done so in the previous trial that resulted in a mistrial. The majority opines that there were other ways for Honeycutt to present a consent defense, but this is foolishness.[10] Clearly the primary way to show a consensual-sex defense is to have the accused testify to the consensual act. Further, the defendant should not be forced to use secondary, less persuasive evidence in meeting one charge in order to preserve his right to remain silent on the other charges.[11]
By failing to sever the charges, Honeycutt was forced to surrender his right against self-incrimination as to some charges in order to present his defense to the other serious charges. No defendant should be so compelled when the situation could be avoided by a severance of the charges for trial.

The failure to give Honeycutt’s consent instruction

It is well established that a criminal defendant is entitled to an adequate instruction on the defense theory of the case, “no matter how weak or incredible the evidence supporting the theory may appear to be.”[12] Recognizing this, the majority states that Honeycutt’s proposed instruction on reasonable mistaken belief of consent must be given as long as there is evidence to support this theory. However, the majority concludes that the district court did not err in refusing Honeycutt’s proposed instruction because it was an incomplete statement of the law which, according to the majority, equates to an incorrect statement of the law. I believe that the majority’s conclusion, which basically requires a perfect instruction, is inconsistent with the underlying policy entitling a defendant to an instruction on the defense theory of the case.
We have required that the defendant’s proposed instruction on the defense theory of the case must correctly state the law.[13] However, we have not required a perfect instruction. Such a requirement is inconsistent with our policy that a defendant is entitled to an instruction on his theory of the case even if the evidence supporting his theory is weak or slight. If the proposed *678 instruction is poorly drafted, a district court has an affirmative obligation to cooperate with the defendant to correct the proposed instruction or to incorporate the substance of such an instruction in one drafted by the court.[14] Indeed, the Court of Appeals of Mississippi has stated:
[T]he trial court cannot simply reject the poorly-drafted instruction, thus depriving the defendant of his defense, but the court has ‘ ‘the duty to make reasonable modifications of the requested instruction or, at the very least, to point out to [the defendant] wherein it may have been deficient and allow reasonable opportunity for correction.”[15]
Here, Honeycutt’s proposed instruction placed the district court on notice regarding the issue of reasonable mistaken belief of consent.[16] In addition, Honeycutt provided the district court with the legal authority in support of giving the instruction. The majority notes that Honeycutt omitted the bracketed portion of the proposed instruction, which was based on instruction 10.65 from the California Jury Instructions for Criminal Cases (“CALJIC”). In support of its conclusion that Honeycutt’s proposed instruction was incomplete, and therefore an incorrect statement of the law, the majority cites to the comment to CALJIC 10.65. However, the comment does not require that the bracketed part be included when there is conflicting evidence, but instead suggests that it should be utilized in situations where there is conflicting evidence 'on the issue of consent. Because the bracketed part of CALJIC 10.65 is not required, I conclude that Honeycutt’s proposed instruction was not an incomplete statement of the law and more significantly, I conclude that Honeycutt’s omission does not equate to an incorrect statement of the law.
Even assuming that Honeycutt’s proposed instruction was technically deficient in form, it was substantially correct. Honeycutt *679 should be provided the opportunity to make any corrections to his proposed instruction, and not simply rejected based on an omitted portion, which is not required. Accordingly, I conclude that the district court’s refusal to give Honeycutt’s proposed instruction was erroneous, and thus reversal is mandated.

Prosecutorial misconduct

The instances of prosecutorial misconduct were pervasive and substantial. They ranged from a demonstration that resulted in the prosecutor choking Honeycutt, to the prosecutor vouching for a witness and commenting on which witnesses were telling the truth.
First, Honeycutt contended that the sexual-assault incident could not have happened the way the victim described, and an in-court demonstration was conducted with a neutral party. When the prosecutor began his cross-examination, he asked if he could do his own court demonstration. Upon receiving permission, he approached Honeycutt, placed his arms across Honeycutt’s throat and pushed hard. Honeycutt’s eyes began watering, and he began choking and coughing. Defense counsel objected, and the district court ordered the “demonstration” to stop. A subsequent motion for a mistrial was denied.
An accused who takes the stand runs many risks. One of them should not be that the prosecutor would physically assault him or her. Assaulting a defendant during trial is so prejudicial that it should be reversible error.[17] In this case, the physical assault had two negative impacts on Honeycutt. First, the demonstration was by no means reliable in reenacting what happened, and the effects on Honeycutt could easily have been more a result of the prosecutor’s aggression than an accurate depiction of what occurred. Second, it clearly showed the personal animus and bias the prosecutor had toward Honeycutt. We have often stated that a prosecutor should not show his personal animus toward a defendant before a jury.[18] The majority opines that Honeycutt consented to the assault, but what choice did Honeycutt have when the district court gave the prosecutor permission to proceed with the demonstration, and the prosecutor then used extensive force in conducting the demonstration.
In a recent case, Hollaway v. State,[19] the defendant Hollaway wore a stun belt that accidentally went off during closing argu *680 ments in a murder trial. Hollaway was sent writhing to the floor.[20] This court called the incident an “arbitrary and prejudicial factor” and reversed the case, in part, because of this incident.[21] Here, the intentional assault on Honeycutt was no less arbitrary and prejudicial. While the concerns of underscoring an accused’s potential violence is not present in this case as it was in Hollaway, we do have the additional factors of an unreliable demonstration and an intentional assault against an accused by the State’s representative. This incident introduced an arbitrary and prejudicial factor into the trial that made the trial result unreliable.
Next, in closing argument, the prosecutor stated that Honeycutt and one of his witnesses were the “kind of people” who need heavy security. He also stated that Honeycutt’s witness was a liar, implied that the State’s witnesses were more honest, vouched for the victim’s credibility, and stated that Honeycutt was guilty. The prosecutor also argued facts that were not in evidence when he stated the reasons why Honeycutt approached David Paule to solicit the murder of the sexual assault victim.
It is improper for a prosecutor to vouch for the credibility of a witness.[22] It is also improper to brand a defendant as a liar, or accuse his witness of lying.[23] Further, it is improper to refer to the defendant in a derogatory manner,[24] and references should not be made to events or documents that were not in evidence.[25]
While objections to most of the prosecutor’s improper comments were not made, we can consider multiple incidents of substantial error under the plain error doctrine.[26] In light of the *681 conflicting evidence regarding consent, I conclude that the multiple incidents of prosecutorial misconduct are sufficient to amount to reversible plain error.
In summary, I conclude that each of the above instances of error — severance, failure to give Honeycutt’s consent instruction, and prosecutorial misconduct — constitute reversible error. In any event, I conclude that the cumulative error mandates this court to reverse and remand for a new trial.
Therefore, I respectfully dissent.

See NRS 174.165(1).

See Cross v. United States, 335 F.2d 987, 989 (D.C. Cir. 1964).

Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989).

Harrison v. United States, 392 U.S. 219, 222 (1968) (noting that when a defendant waives his right to remain silent at one proceeding, he has waived it for all subsequent proceedings).

Edmonds v. United States, 273 F.2d 108, 112-13 (D.C. Cir. 1959).

Id.

 184 F.3d 643 , 646 (7th Cir. 1999).

Id. at 645.

Buff v. State, 114 Nev. 1237, 1245, 970 P.2d 564, 569 (1998).

See Cross, 335 F.2d at 989 (“Prejudice has consistently been held to occur when . . . [joinder] embarrasses or confounds an accused in making his defense.”).

See United States v. Scivola, 766 F.2d 37, 43 (1st Cir. 1985) (stating that a defendant may deserve a severance of counts where the defendant makes “a convincing showing that ‘he has both important testimony to give concerning one count and strong need to refrain from testifying on the other’ ’ ’ (quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968))).

Brooks v. State, 103 Nev. 611, 613, 747 P.2d 893, 895 (1987).

See Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989).

See Echavarria v. State, 108 Nev. 734, 748, 839 P.2d 589, 598-99 (1992) (concluding that the district court did not err when it refused the defendant’s proposed instruction but offered another instruction which incorporated the substance of the defendant’s proposed deadly-weapon-enhancement instruction); see also U.S. v. Newcomb, 6 F.3d 1129, 1133 (6th Cir. 1993) (noting that the district court is responsible for making the necessary alterations to the defendant’s proposed instruction if it is technically deficient and that the legal error could not serve to eliminate the defendant’s existing right to have the jury instructed on his theory of the case); People v. Nunez, 841 P.2d 261, 266 (Colo. 1992) (en banc) (same).

Miller v. State, 733 So. 2d 846, 849 (Miss. Ct. App. 1998) (quoting Anderson v. State, 571 So. 2d 961, 964 (Miss. 1990)).

Cf. Barnes v. Delta Lines, Inc., 99 Nev. 688, 690 n.1, 669 P.2d 709, 710 n.1 (1983) (concluding that the requirements of NRCP 51 were met when the appellants provided the trial judge with a citation to relevant legal authority in support of giving their proposed instruction, which placed the judge on notice regarding the issues of law involved).

See Crow v. State, 984 S.W.2d 260, 263 (Tex. Crim. App. 1998) (Baird, J., dissenting).

See Collier v. State, 101 Nev. 473, 480, 705 P.2d 1126, 1130 (1985) (concluding that the prosecutor telling the defendant he deserved to die in the presence of the jury was egregiously improper), modified on other grounds by Howard v. State, 106 Nev. 713, 719, 800 P.2d 175, 178 (1990).

 116 Nev. 732, 742, 6 P.3d 987, 994 (2000).

Id.

 Id.

See Lisle v. State, 113 Nev. 540, 553, 937 P.2d 473, 481 (1997) (vouching for the credibility of a witness is impermissible because it invades the jury’s function of assessing credibility); Yates v. State, 103 Nev. 200, 203, 734 P.2d 1252, 1254 (1987) (“Any expression of opinion on the guilt of an accused is a violation of prosecutorial ethics.”).

See Ross v. State, 106 Nev. 924, 927-28, 803 P.2d 1104, 1106 (1990) (holding that a prosecutorial statement that a defense witness is a liar is not a proper argument); Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988) (stating that it is improper argument to characterize a witness as a liar).

See McGuire v. State, 100 Nev. 153, 157-58, 677 P.2d 1060, 1063 (1984) (“Disparaging comments have absolutely no place in a courtroom, and clearly constitute misconduct.”).

See Rippo v. State, 113 Nev. 1239, 1254-55, 946 P.2d 1017, 1027 (1997) (stating that a prosecutor’s comment to the effect that interviews and “things” happened outside the courtroom were improper references to evidence not presented at trial); Williams v. State, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987) (noting that a prosecutor may not argue facts or inferences not supported by the evidence).

Rowland v. State, 118 Nev. 31, 38, 39 P.3d 114, 118 (2002).