# IN THE SUPREME COURT OF THE STATE OF NEVADA

DONALD F. BOYER, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68864

**FILED**

SEP 2 1 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK



## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of six counts of sexual assault of a minor under 16 years of age. Eighth Judicial District Court, Clark County; Jennifer P. Togliatti, Judge. Boyer raises multiple issues on appeal. First, Boyer complains that the district court erred in excluding testimony regarding the relationship that the victim, C.W., had with a young man four years her senior, J.L. According to Boyer, this error prevented the defense from effectively arguing that C.W.'s breakup with J.L. caused her sudden change in behavior, not Boyer's sexual assault. Second, Boyer contends that the district court abused its discretion by permitting the testimony of the State's rebuttal alibi witness because the State noticed the witness too late under NRS 174.233. Next, he alleges that the State committed five instances of prosecutorial misconduct. Finally, he argues that there was not sufficient evidence for the jury to find him guilty and that his conviction should be reversed due to cumulative error. We affirm.

## I.

Boyer first complains that the district court's pretrial order in limine excluding evidence pertaining to C.W.'s relationship with J.L. prevented him from responding to the State's opening argument regarding

16-29342

the cause of C.W.'s sudden change in behavior, including a drop in grades and cutting herself.[1] At the pretrial hearing on this motion, Boyer stated that he did not oppose it. It was not until trial was underway that Boyer objected to the breadth of the district court's order in limine, filing his own "motion in limine to include references to [J.L.'s] relationship with C.W. in rebuttal," which the district court granted.

We review Boyer's challenge to the breadth of the initial order in limine for plain error, given Boyer's non-opposition. *See Martinorellan v. State*, 131 Nev., Adv. Op. 6, 343 P.3d 590, 593 (2015). Boyer claims the district court's order prejudiced him because it excluded testimony "related to any [of C.W.'s] prior relationships," which prevented him from arguing that C.W.'s breakup with J.L. caused her behavior changes, not the alleged sexual assault, until the trial was well underway. Even crediting Boyer's objection to the breadth of the order, Boyer cannot demonstrate plain error. In granting the State's motion in limine, the district court told Boyer that he could request permission to introduce evidence on the J.L. relationship should the State open the door on it, which is exactly what happened when, after the State's opening statement, Boyer filed his motion in limine, which was granted.

Boyer complains that the district court prejudiced his case because it did not immediately grant his motion in limine. Again, we review for plain error, as Boyer's motion sought to "include references to [J.L.'s] relationship with C.W. *in rebuttal*," and, at the time Boyer filed his motion in limine, the State had not finished presenting its case-in-chief.

---

[1]The parties are familiar with the facts and we do not recite them here except to the extent necessary to explain our decision.

*Id.* (emphasis added). Indeed, Boyer acknowledged as much, when he told the district court it could hear argument on his motion later if need be. The district court did not commit plain error by not ruling on Boyer's motion in limine until the end of the third day of Boyer's seven-day trial.

## II.

Boyer next argues that the district court abused its discretion in permitting the State's rebuttal alibi witness, L.W., to testify. *See Morales v. State*, 122 Nev. 966, 971, 143 P.3d 463, 466 (2006). Both Boyer and the State filed their notices of alibi and rebuttal alibi witnesses on the same day, June 10, 2015, five days before trial. But earlier, on October 10, 2014, Boyer filed an affidavit from his alibi witness, E.M., in support of his motion to reduce bail. Boyer maintains that this affidavit qualified as a notice of alibi witnesses under NRS 174.233, triggering the State's reciprocal disclosure obligation and making the State's June 10, 2015, notice of rebuttal alibi witnesses untimely. The district court disagreed, and so do we.

NRS 174.233(1) provides that a defendant must, ten days before trial, provide the prosecuting attorney with a written notice of the defendant's intention to claim an alibi and that notice "must contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and . . . the names and last known addresses of the witnesses by whom the defendant proposes to establish the alibi." NRS 174.233(2) mandates that the State provide its list of rebuttal alibi witnesses within 10 days of receiving the defendant's list.

The E.M. affidavit failed to meet the requirements of NRS 174.233. It was filed in support of a motion to reduce bail. Nothing in the affidavit expressed Boyer's intent to call E.M. as an alibi witness at trial.

*See Morales*, 122 Nev. at 971, 143 P.3d at 466 ("NRS 174.233(1) requires written disclosure to the State of a defendant's intention to introduce alibi testimony."). Further, the affidavit did not state E.M's last known address. *See* NRS 174.233(1). And, although the affidavit provides that E.M. arrived at Boyer's residence on Friday, January 3, and spent uninterrupted time with Boyer, until Monday, January 6, it does not specifically state where Boyer was during the crime. *See id.* As E.M.'s affidavit failed to comply with NRS 174.233, it did not qualify as Boyer's notice of alibi witnesses. Instead, Boyer's June 10, 2015 notice of alibi witnesses was the only document that met NRS 174.233's requirements and thus, the State's notice of rebuttal alibi witnesses, filed the same day, was timely.

### III.

Boyer charges the State with five separate acts of prosecutorial misconduct. In reviewing prosecutorial misconduct claims, this court utilizes a two-step analysis. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). First, we determine whether the prosecutor's conduct was improper. *Id.* Second, if the conduct was improper, we assess whether the misconduct requires reversal. *Id.* Since Boyer failed to object to any of the alleged prosecutorial misconduct at trial, plain error review applies. *Id.* at 1190, 196 P.3d at 477.

### A.

Boyer argues that the State committed prosecutorial misconduct by introducing testimony that the Elks Lodge forced him to resign as a result of the allegations in this case. This evidence, he claims, constituted inadmissible character or prior bad act evidence, and was irrelevant under NRS 48.015. Though we agree with Boyer that the evidence was irrelevant if offered to show the Lodge members adjudged

him guilty of sexual assault of C.W., a minor volunteering her time to the Lodge, and therefore expelled him from membership, Boyer fails to provide any record cites where this evidence was used for that purpose. *But see* NRAP 28(a)(10)(A) (the argument in appellant's brief must contain citations to the parts of the record on which appellant relies). Instead, Boyer testified that he was asked to resign because the allegations against him reflected poorly on the Lodge's reputation. Boyer also testified that he was not allowed to tell his side of the dispute between him and another Lodge member when he was asked to resign. It seems unlikely, therefore, that the jury used the evidence for an impermissible purpose as Boyer argues. Although the evidence of Boyer's Lodge status was irrelevant, it did not cause Boyer actual prejudice, and thus, does not warrant reversal under plain error review.

### B.

Next, Boyer argues that the State committed prosecutorial misconduct by having Detective LaFreniere vouch for the victim, C.W. The prosecution cannot vouch for a witness, *Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004), or ask one witness to vouch for the credibility of another. *Leonard v. State*, 117 Nev. 53, 74 n.14, 17 P.3d 397, 410 n.14 (2001). Witness vouching occurs when a witness "gives a direct or indirect opinion on whether he or she believes the other witness is telling the truth or is truthful." *Smith v. Franke*, 337 P.3d 986, 990 (Or. Ct. App. 2014).

During Detective LaFreniere's testimony, the State asked him what he did to corroborate C.W.'s report. The district court called a sidebar, cautioning the parties to avoid vouching, but ultimately determined that the State did not cross the line. After reviewing the transcript, we agree with the district court. Detective LaFreniere

explained the efforts of his investigation and did not express whether he personally believed C.W. *See Commonwealth v. Ahart*, 983 N.E. 2d 1203, 1207-08 (Mass. 2013) (the officer's description of how he verified the witness's grand jury testimony was not improper vouching because "he had not expressed his personal belief in the [witness's] credibility"); *Burton v. State*, 46 P.3d 309, 319-20 (Wyo. 2002) ( it was not vouching for detective to state that victim's trial testimony was consistent with her statement when he first interviewed the victim).

Boyer points to Detective LaFreniere's testimony that C.W. had no ulterior motive to come to the police as an instance of vouching. But the district court *sua sponte* called another sidebar after this testimony and rebuked the State that it crossed the line into vouching. It then told the jury that, "witness credibility is a question for the jury. The detective's testimony regarding any opinion he may have regarding the motive of the alleged victim in making certain statements is irrelevant, and I instruct you to disregard it." Jury Instruction No. 21 repeated this caution. This court presumes that the "jury followed the district court's orders and instructions." *Allred v. State*, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004). Although Boyer complains that the district court's oral instruction was not provided immediately, the transcript shows that it was given five pages after the offending testimony. Thus, the jury likely knew which testimony it was to disregard. Therefore, reversal is not warranted on this basis.

## C.

Boyer next argues that the State impermissibly attempted to shift the burden of proof to him throughout trial. It is a fundamental principle of criminal law that the State "has the burden of proving the defendant guilty beyond a reasonable doubt and that the defendant is not

obligated to take the stand or produce any evidence whatsoever." *Barron v. State*, 105 Nev. 767, 778, 783 P.2d 444, 451 (1989). Moreover, "[t]he tactic of stating that the defendant can produce certain evidence . . . is an attempt to shift the burden of proof and is improper." *Id.* Boyer points to testimony from his alibi witness, E.M., that she and Boyer went out for pizza the night of January 3, 2014, when the crime allegedly occurred, and the State's effort to cast doubt on E.M.'s veracity by arguing that her testimony was suspicious since she did not publicly offer this alibi until November 2014, at the preliminary hearing. To Boyer, the State's argument implied that, "Appellant had the duty to come forward and present information that would exonerate him." But the State was not arguing that Boyer had a duty to provide the police with E.M.'s alibi, only that E.M.'s delay in coming forward cast doubt on her testimony. *See Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990) (it is proper to argue that a defendant's theory is unbelievable because "she waited until trial to come forward with a defense instead of going directly to the police"). This was fair comment, not impermissible burden shifting.

Boyer maintains that the State shifted the burden of proof to him by arguing in rebuttal that he had not provided the jury with a motive for C.W. to lie about the allegations. However, when a defendant injects a theory into the trial, the prosecution can "properly argue that the defense failed to substantiate its theory with supporting evidence." *Evans v. State*, 117 Nev. 609, 631, 28 P.3d 498, 513 (2001). Boyer injected the theory into the case that C.W. lied about the allegations and the State only argued that Boyer failed to substantiate his theory with evidence that C.W. had something to gain by lying. Thus, the State did not improperly shift the

burden of proof, nor was this an instance of vouching for the reasons discussed *supra* Part III(B).

## D.

Boyer also alleges that the State improperly elicited opinion testimony from Detective Prichard, who stated that C.W.'s diagram of Boyer's bedroom was a fair depiction, and the State compounded the error by returning to the subject in its closing argument. Although Boyer states that Detective Prichard provided expert confirmation that the diagram was accurate, he does not argue that Detective Prichard should have been qualified as an expert. Rather, Boyer relies on NRS 50.265, which provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> 1. Rationally based on the perception of the witness; and
>
> 2. Helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue.

In Boyer's view, the "detective's opinion as to the accuracy of the drawing hindered rather than helped the jury to make its own unbiased analysis of the evidence presented."[2] But Detective Prichard was in Boyer's bedroom

---

[2] Boyer also cited to *Cordova v. State*, 116 Nev. 664, 670, 6 P.3d 481, 485 (2000), for the proposition that jurors "may be improperly swayed by the opinion of a witness who is presented as an experienced criminal investigator." (internal quotation omitted). However, this court was referring to a detective's opinion on the truthfulness of a defendant's confession; it did not hold that a detective may not give lay opinion testimony because it could improperly influence the jury. *Cordova*, 116 Nev. at 670, 6 P.3d at 485.

and, based on his perceptions, could give his opinion on the accuracy of C.W.'s diagram. This testimony likely helped the jury, and Boyer does not make clear how it hindered their understanding of the evidence. Thus, Detective Prichard provided proper lay opinion testimony regarding the accuracy of C.W.'s diagram and, as such, the State could refer to his testimony in its closing.

E.

Last, Boyer accuses the State of committing prosecutorial misconduct by characterizing the testimony of E.M. and Boyer as lies. "[I]t is improper argument for counsel to characterize a witness as a liar." *Ross*, 106 Nev. at 927, 803 P.2d at 1105. In the State's closing rebuttal argument, it discussed the inconsistencies in Boyer and E.M.'s stories and then said:

> And what other inconsistencies have we heard from the defense side? *Inconsistencies and some might call them lies.* Well we heard about keys, right? You heard about keys. You heard about rocking chairs. All of these things were rebutted by State's witnesses, both [L] who said she was with the defendant on one of the nights and [E], who said the defendant's door is always locked.

(emphasis added). Boyer argues that since the State was discussing his and E.M.'s testimony before this statement, the State was calling them liars. The State argues that it was referring to Boyer's characterization of the inconsistencies in C.W.'s story as lies and reminding the jury that it had rebutted Boyer's evidence of C.W.'s inconsistencies or lies. The transcript is unclear but, given Boyer's lack of contemporaneous objection, which might have cleared the matter up, we credit the State's position. At minimum, the transcript did not refer to Boyer and E.M. as liars in a way

SUPREME COURT
OF
NEVADA

(O) 1947A

9

that was "apparent from a casual inspection of the record." *Martinorellan*, 131 Nev., Adv. Op. 6, 343 P.3d at 593. Thus, plain error does not appear.

## IV.

Boyer challenges the sufficiency of the evidence to sustain his conviction of sexually assaulting C.W. "[T]he question is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt." *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). Instead, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation omitted).

The record contains sufficient evidence for a rational juror to have found the essential elements of the crime beyond a reasonable doubt. C.W. gave detailed and lengthy testimony about what happened January 3, 2014, and how her behavior changed afterward. Witnesses supported that C.W.'s behavior started to change in January 2014 and some noticed C.W. cutting herself beginning in February 2014. Moreover, Detective Prichard testified that C.W.'s diagram was a fair and accurate depiction of Boyer's bedroom and he found Boyer's condoms in the exact drawer where C.W. said they would be, along with other items C.W. described.

Additionally, many of Boyer's defenses were called into question. Although E.M. testified that she was with Boyer the weekend of January 3, 2014—L.W. testified that she was with Boyer on January 4, 2014. L.W.'s memory may have seemed more trustworthy to the jury as she testified that she was able to remember the weekend because her grandson's birthday was January 3rd and his party was on January 5th of that year. Moreover, E.M. testified that she realized she went to get pizza

Supreme Court
OF
Nevada

(O) 1947A

10

with Boyer on the night in question after Detective LaFreniere first interviewed Boyer about the sexual assault in June 2014. Yet, Boyer testified that Detective LaFreniere only told him in the interview the month, not the day, that C.W. alleged he sexually assaulted her. He did not find out the exact day of the assault until October 8, 2014, at his arraignment, and an hour later, he realized he had gone for pizza with E.M. that night. This inconsistency weakened Boyer's alibi.

Boyer also argued that C.W.'s diagram was inaccurate because it depicted a rocking chair that he did not purchase until March 2014. However, E.S., a former girlfriend of Boyer, testified that she had seen the rocking chair before January 3, 2014. Although E.S. was Boyer's former girlfriend, Boyer testified that they had a clean break-up and were kind to each other, making her seem less biased.

Boyer argues that there was insufficient evidence because there was no direct evidence that C.W. was at his home on January 3rd. However, "[t]his court will not disturb a jury verdict where there is substantial evidence to support it, and circumstantial evidence alone may support a conviction." *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002). Therefore, this argument is unavailing. Boyer also argues that the "primary inquiry in this case, when all is considered, is whether the testimony of C.W. can be believed. . . . This case was a credibility test, and should have been nothing more." Yet, "[t]he rule is well established that it is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 438-39 (1975). While the evidence was contested, it was sufficient for a rational juror to have convicted Boyer of sexual assault beyond a reasonable doubt.

## V.

Finally, Boyer argues that he did not receive a fair trial because of the cumulative errors in this case. "Although individual errors may be harmless, the cumulative effect of multiple errors may violate a defendant's constitutional right to a fair trial." *Byford v. State*, 116 Nev. 215, 241-42, 994 P.2d 700, 717 (2000). In reviewing a cumulative error claim this court considers, "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

The issue of guilt was somewhat close given the conflicting testimony as between Boyer and C.W., C.W.'s delay in reporting the crime, and the lack of physical evidence. However, as discussed above, substantial evidence supported Boyer's conviction. As such, the first factor weighs against Boyer. After reviewing Boyer's arguments, many under a plain error standard, none rises to the level of reversible error, singly or in combination. Therefore, the second factor weighs against Boyer. Unquestionably, sexual assault of a minor is a grave crime. Nonetheless, cumulative error did not prevent Boyer from receiving a fair trial. Accordingly we,

ORDER the judgment of the district court AFFIRMED.

_____, C. J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Jennifer P. Togliatti, District Judge
Guymon & Hendron, PLLC
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A