UNITED STATES of America,
Plaintiff–Appellee,

v.

Corey J. DIXON, Defendant–Appellant.

No. 98–1823.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1998.

Decided July 6, 1999.

Thomas P. Schneider, Mario Gonzales (argued), Office of the United States Attorney, Milwaukee, WI, for plaintiff-appellee.

Christopher W. Duren (argued), Waunakee, WI, for defendant-appellant.

Before POSNER, Chief Judge, WOOD, JR., and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

On September 9, 1997, a federal grand jury returned a two-count, superseding indictment against Corey J. Dixon. Count I of the indictment charged Dixon with aggravated sexual abuse of Sherry Barnes in violation of 18 U.S.C. § 2241(a). Count II charged Dixon with attempted sexual abuse of Beverly LaBarge in violation of 18 U.S.C. § 2242(1). The case was tried before a jury, and Dixon was convicted on both counts. He was sentenced to 151 months imprisonment on Count I and 151 months imprisonment on Count II with the sentences to run concurrently. Dixon filed this timely appeal, challenging the district court's denial of his motion to sever Count I from Count II for separate trials.

## BACKGROUND

On June 18, 1994, Beverly LaBarge, James Washinawatok, and Dixon were present at a large party in a private home on the Menominee Indian Reservation. Washinawatok and Dixon were members of the Menominee Indian tribe while LaBarge was a member of the Lac du Flambeau Indian tribe. LaBarge had never met Dixon or Washinawatok prior to that day. Most of the people at the party were consuming alcohol, including LaBarge and Washinawatok. The party continued throughout the night and into the early morning hours of June 19, 1994, and many of the party guests slept at the home. Around 8:00 a.m. on June 19, LaBarge and Washinawatok went to sleep together in a bed in the basement of the home.

At trial, LaBarge testified that around 10:00 a.m. she was awakened by Dixon who was lying next to her in the bed naked, touching her and trying to remove her clothing. According to LaBarge, when she woke up, Dixon put his hand over her mouth and told her if she moved or screamed "he was going to make it hurt." LaBarge was able to awaken Washinawatok, who was sleeping next to her, by nudging him with her arm. When Washinawatok awoke, he could hear Dixon whisper something to LaBarge but could not make out what was said. Washinawatok confronted Dixon, and Dixon got up, put on his shorts, and left the bedroom. Washinawatok testified that after Dixon left the room he noticed a condom wrapper on the floor near the bed which he had not seen when he went to bed. Washinawatok wanted to pursue Dixon, but LaBarge asked him not to go. LaBarge was extremely upset, and she and Washinawatok immediately contacted the Menominee Tribal Police to report the incident. Dixon was arrested by the Menominee Tribal Police on June 19, 1994, but no charges were brought and Dixon was released.

On June 22, 1997, Dixon and Sherry Barnes, a member of the Menominee Indian tribe, consumed alcohol together at the Rainbow Bar on the Menominee Indian Reservation. Barnes had known Dixon since she was six years old. Around 5:30 p.m. on June 22, Barnes and Dixon left the Rainbow Bar together and drove to visit Barnes' child who was staying with a babysitter. Dixon and Barnes decided to return to the Rainbow Bar, but on the way back, they pulled over to the side of the road to drink a few beers. Barnes testified that she did not remember if she had consensual sex with Dixon while they were parked along the side of the road. Dixon and Barnes then returned to the Rainbow Bar. When they returned to the bar, several people noticed that Dixon had numerous hickeys on his neck.

Dixon and Barnes remained at the Rainbow Bar until its closing time. When Barnes left the bar, she waited in Dixon's car for him to give her a ride home. During the ride home, Dixon asked Barnes to perform oral sex on him in exchange for the ride home. Barnes refused. Dixon

then drove his vehicle down an old logging road, pulled down his pants, pushed Barnes down on the car seat, straddled her upper body, and attempted to place his penis in her mouth. Barnes then bit Dixon's penis. The two struggled for a while and then Dixon threw Barnes out of the car and drove away. Barnes walked through the woods until she reached a home in the early morning hours of June 23. Barnes contacted the Menominee Tribal Police and made a statement regarding the incident. She received medical care for her injuries and photographs were taken. Dixon was arrested, pursuant to a warrant, on June 30, 1997. On July 22, 1997, a federal grand jury returned a one-count indictment charging Dixon with aggravated sexual abuse of Sherry Barnes, in violation of 18 U.S.C. § 2241(a), based on the June 23, 1997 incident. On September 9, 1997, a federal grand jury returned a two-count superseding indictment against Dixon. The superseding indictment included the aggravated sexual abuse charge as Count I and added a second count (Count II) which charged Dixon with attempted sexual abuse of Beverly La-Barge in violation of 18 U.S.C. § 2242(1) based on the June 19, 1994 incident.

Dixon filed a motion to sever Count I from Count II for separate trials. The district court denied Dixon's motion for severance, and, following a three-day trial, a jury returned a verdict of guilty on both counts. Dixon was sentenced to 151 months imprisonment on Count I and 151 months imprisonment on Count II with the sentences to run concurrently. Dixon appeals.

## ANALYSIS

Dixon raises a single issue on appeal. He contends that the district court erred in refusing to sever Count I from Count II for separate trials pursuant to Fed.R.Crim.P. 14. Rule 14 allows a district judge to sever charges for separate trials "[i]f it appears that a defendant or the government is prejudiced by a joinder of [the] offenses ... for trial." Fed. R.Crim.P. 14. The decision of whether to grant or deny a severance is left to the sound discretion of the trial court; we review only for abuse of discretion. *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir.1998). To succeed on appeal, a defendant must "show that the denial of severance caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him with a better opportunity for acquittal." *Id.*

First, Dixon contends that Count II was added to the indictment and used solely for the purpose of proving Count I and that each count standing alone would have lacked sufficient evidence to convict him beyond a reasonable doubt. Dixon argues that "[t]he whole purpose and sole reason Count Two was ever added to the indictment was to bolster the government's case" against him on Count I. Dixon contends that "without Count One, Count Two never would have existed" because "three years had already elapsed and no charges were ever brought." However, Count II, the assault against LaBarge, was a serious crime which was immediately reported to the Menominee Tribal Police. Charges from the incident were brought within the appropriate statute of limitations. Moreover, the government presented sufficient evidence to support a conviction on both counts. With respect to Count I, the government presented testimony from the victim, Barnes, and from four other witnesses who observed Barnes' emotional state soon after the incident, as well as photographs, medical reports, and Barnes' damaged clothing. With respect to Count II, the government presented testimony from Beverly LaBarge as well as from Washinawatok. There was sufficient evidence to support convictions on both counts without the benefit of any alleged "spill-over" evidence. Additionally, Dixon asserts that the joinder of the counts allowed the government to portray him as

a sexual predator and to take advantage of the cumulative nature of the evidence to infer a criminal disposition. However, as discussed above, there was sufficient evidence to support convictions on both counts. Furthermore, the district court properly instructed the jury to consider each count and the evidence relating to it separately. The ability of a jury to follow instructions is instrumental to our theory of trial. *United States v. Freland,* 141 F.3d 1223, 1227 (7th Cir.1998) (citing *United States v. Donaldson,* 978 F.2d 381, 392 (7th Cir.1992)). Dixon's trial lasted just three days. The evidence was presented in chronological order and was not complicated. Given the circumstances, we believe that the jury was able to follow the district court's limiting instruction. Dixon was not subject to an improper inference of criminal disposition.

Dixon further asserts that he was prejudiced because he wanted to testify in his own defense as to Count II but to remain silent as to Count I. "[S]everance is not required every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant." *Alexander,* 135 F.3d at 477 (internal quotations and citations omitted). As the district court correctly noted, severance is not required until the defendant makes a convincing showing that he has (1) important testimony to give concerning one count and (2) a strong need to refrain from testifying on the other. *United States v. Archer,* 843 F.2d 1019, 1022 (7th Cir.1988). The district court found that Dixon failed to show a strong need to refrain from testifying as to Count I. Dixon contends that he had a strong need to refrain from testifying as to Count I because, with respect to that count, the government's case was weak and there was other testimony supporting Dixon's defense.

We have held that a defendant "fails to make a convincing demonstration of a 'strong need to refrain from testifying' on particular counts when '[w]ithout [the defendant's] testimony, the government offered sufficient evidence to support the jury's verdict' on these counts." *United States v. Balzano,* 916 F.2d 1273, 1283 (7th Cir.1990) (citing *Archer,* 843 F.2d at 1022); *see also Freland,* 141 F.3d at 1227. As discussed above, the government presented sufficient evidence to convict Dixon on Count I. Furthermore, both in his brief and at oral argument, Dixon failed to point to any specific harm that would result from his testifying on Count I. A general statement of harm is insufficient to meet the standard set forth in *Archer, Alexander,* 135 F.3d at 477, and our independent examination of the record does not reveal how Dixon's testimony would undermine his defense of consent. The district court did not abuse its discretion in denying Dixon's motion for severance.

AFFIRMED.