56 P.3d 362 (2002)
Todd Michael HONEYCUTT, Appellant,
v.
The STATE of Nevada, Respondent.
No. 35466, 35468.
Supreme Court of Nevada.
October 31, 2002.
*364 Mace J. Yampolsky, Las Vegas, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, James Tufteland, Chief Deputy District Attorney, and William D. Kephart, Deputy District Attorney, Clark County, for Respondent.
Before SHEARING, AGOSTI and ROSE, JJ.

OPINION
SHEARING, J.
A jury convicted Todd Michael Honeycutt of one count of kidnapping, two counts of sexual assault, and one count of solicitation to commit murder. Honeycutt appeals these convictions, claiming numerous instances of error that both individually and cumulatively denied his right to a fair trial. We find that Honeycutt was not denied his right to a fair trial. Accordingly, we affirm the judgment of conviction.

FACTS
On May 15, 1998, the victim and her friend, Janine Fischer, were on vacation at the Luxor Hotel in Las Vegas. That evening, both women met Honeycutt at the Hard Rock Café bar, shared several drinks and began talking. After Fischer left, the victim stayed with Honeycutt in the bar. The victim testified that Honeycutt tried to kiss her, but she pushed him away, stating that she did not like to kiss in public. Shortly thereafter, the victim told Honeycutt that she wanted to leave, and he offered to take her to her hotel. She agreed to go with him and entered his van. While the van was parked, Honeycutt began kissing the victim's lips and breasts.
The victim testified that she resisted Honeycutt and told him she wanted to go back to the hotel. Honeycutt threw her down between the passenger seat and the driver's seat. He lay on top of her and pushed his hand across her throat. She said: "He choked me until I thought my eyes were going to pop out, and my face got extremely hot and red." She testified that he began to pull her pants off while holding her down. She told him to wait so she could get a condom from her pocket. She struggled with him and tried to get up, but Honeycutt pulled her down by the legs and neck.
The victim stated that she began to cry and noticed that Honeycutt had his pants down and his penis exposed. He forced her to perform fellatio on him. She tried to bite him, and he slapped her, saying "you're going to get it now." Honeycutt threw her over the back seat and penetrated her anally. The next thing she remembered was Honeycutt moving off her and back to the driver's seat. She pulled her pants back on and moved back to the front seat, and Honeycutt drove her to her hotel. When asked why she stayed in the van with him, she stated, "I was afraid that I couldn't run. I couldn't move, and I was afraid he was going to run me over."
Honeycutt's testimony differed. He testified that he asked the victim if he could kiss her and she agreed. He stated that when they got in the van, they continued kissing, and he undid her shirt. He stated that the victim was very responsive, and he asked her if she wanted to get into the back seat with him. She replied "yes." Honeycutt testified that the victim undid his pants and performed fellatio on him. She asked if he had any condoms and then looked in her pockets to see if she had one. When Honeycutt tried to penetrate her vaginally, she told him to stop and instead penetrate her anally. He further testified that the victim said nothing when they were having sexual intercourse. Afterwards, Honeycutt and the victim climbed into the front seat. Honeycutt stated that he saw about $200.00 in her purse and took it, but he denied taking the money when she asked. He returned her to the *365 Luxor Hotel, and the victim called Honeycutt "an asshole" and told him to "drop dead."
Sean Ferrell, a bystander, testified that at about 5:45 a.m., the victim approached him "out of nowhere" in front of the Luxor Hotel and asked him to remember a license plate number. She told him she had been sexually assaulted and fell against him "like a rag doll." She was shaking and began crying. He noticed no tears or rips in her clothing. Betty Jo Davis, a security officer at the Luxor Hotel, testified that the victim came to the security office that morning. Davis testified that when she arrived in the office, the victim was sitting in the room with her knees drawn up, crying hysterically and unable to speak. She stated that the victim told her that Honeycutt had sexually assaulted her through anal intercourse and that she was bleeding.
Richard Antal and John Maholick, security officers at the Luxor Hotel, corroborated Davis's account. They stated that the victim gave a voluntary statement about the assault that was videotaped and played at trial. They both agreed that the victim was crying and difficult to understand throughout most of the interview. They also testified that they noticed no bruises or marks on the victim.
The State and the defense introduced contradictory medical testimony regarding bruising on the victim's neck and rectal area. Linda Ebbert, the State's witness, testified that she examined the victim at the hospital with a standard sexual assault kit and used Toludine Blue Dye to test her rectal and vaginal areas for bruising. She pointed out some visible lacerations, abrasions, and redness in the victim's rectal area. She further testified that tears can occur, but are not common, in consensual anal intercourse. She also testified that the victim told her that her neck was sore, but Ebbert noticed no bruising. The defense witness, Dr. Mohamed Eftaiha, testified that Ebbert's findings were not conclusive evidence of nonconsensual anal intercourse. In fact, he concluded that the absence of bruises on the buttocks and neck indicated to him that the victim had possibly consented.
Honeycutt was initially tried on two counts of sexual assault and one count of kidnapping. Honeycutt testified against the advice of counsel, raising the defense of consent. That trial resulted in a mistrial. The district court then scheduled a second trial on the charges.
The district court conducted a Petrocelli[2] hearing prior to the first trial to determine whether evidence should be admitted concerning Honeycutt's prior sexual assault conviction. At that hearing, Honeycutt's former girlfriend testified that in 1997, Honeycutt had sexually assaulted her. She stated that he covered her nose and mouth and assaulted her vaginally and anally. She stated that he was high on speed at the time, and that he hit her on the head when she screamed. Honeycutt entered an Alford[3] plea to that charge, contending that the sexual intercourse was consensual. The district court ruled that the former girlfriend's testimony was admissible.
Between the first and second trials, the State learned that the victim had received letters from Honeycutt threatening her and telling her not to testify, and that Honeycutt wrote a letter to a friend stating that he wanted to scare the victim into not testifying.
Prior to the second trial, David Paule, an inmate incarcerated with Honeycutt, informed Detective Larry Hanna that Honeycutt had approached him and offered him $3,000.00 to hire someone to murder the victim in the sexual assault case. Paule gave Hanna a piece of paper that Honeycutt had given him that contained the victim's name and address. Hanna told Paule that in exchange for eliciting information from Honeycutt regarding the solicitation, he would try to get Paule's charge of being an ex-felon in possession of a firearm "taken away."
Based on this information, the police sent Paule back to speak with Honeycutt twice with a tape recorder, but the tapes malfunctioned each time and failed to record the conversations. Both times Paule stated that *366 Honeycutt talked more evasively about wanting the victim killed and never specifically stated it again. The third time, when a recording was successfully made, Honeycutt made no admissions to Paule's repeated questions about his wanting to solicit the victim's murder. Paule also arranged for Honeycutt to speak to an undercover officer, Mark Preusch, about killing the victim. At that meeting, Honeycutt stated nothing, but Preusch testified that Honeycutt held up a piece of paper that said he wanted the victim to disappear.
Upon learning of these incidents, the State obtained an indictment charging Honeycutt with solicitation to commit murder and filed a motion to join that charge with the sexual assault and kidnapping charges at the second trial. Honeycutt filed a motion to sever the counts, arguing that the various charges involved inconsistent defenses. Furthermore, he argued, joinder for trial violated the Fifth Amendment[4] by forcing him to testify to the solicitation charge because he had already testified to the sexual assault charges. Finally, Honeycutt contended that the solicitation to commit murder charge was too prejudicial to be joined with the original charges. The district court denied the motion, concluding that the counts were sufficiently part of the same course of conduct and did not unfairly prejudice Honeycutt, and thus could be properly joined.
Honeycutt filed a motion to suppress his statements made to Paule and Preusch because they were elicited without proper Miranda[5] warnings. Honeycutt also filed motions to exclude the Luxor security tape and renewed his motion to exclude testimony regarding his prior conviction. The district court denied all motions, stating that Miranda warnings were not required, and although the prior bad act evidence was prejudicial, its probative value outweighed the prejudicial effect.
At the second trial, substantially the same testimony was elicited as had been at the first trial regarding the sexual assault incident. Honeycutt again testified against the advice of counsel, but attempted to assert his Fifth Amendment right not to testify as to the solicitation charge. The district court denied this request, indicating that Honeycutt could assert his Fifth Amendment right not to testify in the second trial, even though he had testified in the first trial, but he could not assert that right as to one charge and not the other.
Honeycutt also introduced the testimony of Sean Dixon, another inmate. Dixon testified that he was present when Honeycutt told Paule that he "wanted a lady scared," but Paule kept asking if Honeycutt wanted her killed. He testified that Honeycutt never said he wanted the victim killed. Dixon further testified that Paule tried three times to ask him to convince Honeycutt to have the woman killed.
The jury returned verdicts of guilty on all counts. The district court sentenced Honeycutt to serve concurrent terms of life with the possibility of parole on the kidnapping count and one sexual assault count. The court also sentenced him to a consecutive term of life with the possibility of parole on the second sexual assault count, and a consecutive term of 180 months on the solicitation count. Honeycutt filed a timely notice of appeal.

DISCUSSION
Honeycutt argues that numerous errors, both individually and cumulatively, violated his right to a fair trial. He alleges that the district court erred in joining the sexual assault and solicitation charges, in denying an instruction on reasonable mistaken belief of consent, in admitting certain evidence, and in condoning numerous instances of prosecutorial misconduct.[6] Because we conclude that *367 the district court did not err, we affirm the judgment of conviction.

Joinder and severance
Honeycutt alleges that the district court erred in denying his motion to sever the solicitation to commit murder charge from the sexual assault and kidnapping charges. He claims that he wanted to testify on the sexual assault and kidnapping charges, but not on the solicitation charge. The district court made clear that Honeycutt could assert his right to remain silent as to all of the charges or to testify as to all of the charges, but could not testify as to some, but not the others. Therefore, Honeycutt chose to testify as to all of the charges and now asserts that his Fifth Amendment rights were violated.
NRS 173.115 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are:
....
2. Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
Clearly, the charge of solicitation to murder the victim/principal witness in a sexual assault and kidnapping case is factually connected to the sexual assault and kidnapping. The charges were properly joined under NRS 173.115(2).
"The decision to sever is left to the discretion of the trial court, and an appellant has the `heavy burden' of showing that the court abused its discretion."[7] Failure to sever requires reversal only if the joinder has "a substantial and injurious effect on the jury's verdict."[8] "The test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever."[9] To require severance, the defendant must demonstrate that a joint trial would be "manifestly prejudicial."[10] The simultaneous trial of the offenses must render the trial fundamentally unfair, and hence, result in a violation of due process.[11] In this case, in a trial of the solicitation to commit murder charge, the sexual assault and kidnapping would be admissible to establish motive, and in a trial of the sexual assault and kidnapping charges, the solicitation to commit murder would be admissible to show consciousness of guilt.[12] Cross-admissibility of the evidence in the two separate charges is one of the key factors in determining whether joinder is appropriate. As this court said in Middleton v. State, "`[i]f... evidence of one charge would be cross-admissible in evidence at a separate trial on another charge, then both charges may be tried together and need not be severed."'[13] The district court did not err in not severing Honeycutt's charges for trial.
Honeycutt claims his Fifth Amendment rights were violated because he was not allowed to testify on the sexual assault and kidnapping charges while simultaneously asserting his Fifth Amendment right to remain silent on the solicitation charge. The United States Court of Appeals for the Seventh Circuit has stated: "`[S]everance is not required every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant." '[14] The burden rests on the defendant *368 to present enough information regarding the nature of the testimony he wishes to give on the one count and his reasons for not wishing to testify on the other to satisfy the court that his claim of prejudice is genuine, and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.[15] Honeycutt made no such detailed showing. "To establish that joinder was prejudicial `requires more than a mere showing that severance might have made acquittal more likely." '[16]
Honeycutt argued that severance should be granted because he wished to present inconsistent defenses, but his defenses were not inconsistent. Wanting to testify as to one offense and not as to another is not an inconsistent defense; it merely reflects a different tactic on each charge. The district court clearly indicated that Honeycutt could choose to assert his Fifth Amendment right not to testify in the second trial, even though he had testified in the first trial.[17] And there is no violation of Honeycutt's rights by making him elect to testify as to all of the charges or to none at all.[18] Criminal defendants routinely face a choice between complete silence and presenting a defense. This has never been thought an invasion of the privilege against compelled self-incrimination.[19]
Honeycutt fails to demonstrate any fundamental unfairness or a violation of his rights in the joinder of the counts of sexual assault, kidnapping, and solicitation to commit murder. The district court did not abuse its discretion in denying Honeycutt's motion to sever the counts.

Instruction regarding mistaken belief in consent
At trial, Honeycutt proposed a jury instruction which stated, in essence, that a reasonable and good faith belief that there was voluntary consent is a defense to a charge of sexual assault. A criminal defendant is entitled to jury instructions on the theory of his case.[20] If the defense theory is supported by at least some evidence which, if reasonably believed, would support an alternate jury verdict, the failure to instruct on that theory constitutes reversible error.[21]
This court has previously indicated that Nevada law supports a defense of reasonable mistaken belief of consent in sexual assault cases.[22] We conclude that based on the wording of NRS 200.366 and our prior case law defining the proof required for sexual assault, Nevada does recognize this defense. NRS 200.366 defines sexual assault as the penetration of another "against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of *369 resisting." In McNair v. State, we concluded that the legal inquiry into the issue of lack of consent consists of two questions: (1) whether the circumstances surrounding the incident indicate that the victim reasonably demonstrated lack of consent; and (2) whether, from the perpetrator's point of view, it was reasonable to conclude that the victim had consented.[23] Thus, because a perpetrator's knowledge of lack of consent is an element of sexual assault, we conclude that a proposed instruction on reasonable mistaken belief of consent must be given when requested as long as some evidence supports its consideration.[24]
Honeycutt's counsel proposed the following instruction, citing instruction 10.65 from the California Jury Instructions for Criminal Cases ("CALJIC") as the sole legal authority:
In the crime of sexual assault, general criminal intent must exist at the time of the commission of the sexual assault. There is no general criminal intent if the defendant had a reasonable and good faith belief that [the victim] voluntarily consented to engage in fellatio and anal intercourse. Therefore, a reasonable and good faith belief that there was a voluntary consent is a defense to such a charge.
If after a consideration of all of the evidence you have a reasonable doubt that the defendant had general criminal intent at the time of the act of fellatio and anal intercourse, you must find him not guilty of such crime.
However, counsel did not include the entire correct instruction based on the evidence in this case. Counsel's proposed instruction omitted the following language:
However, a belief that is based upon ambiguous conduct by an alleged victim that is the product of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another is not a reasonable good faith belief.[25]
The comment to CALJIC 10.65 states:
In People v. Williams (1992) 4 Cal.4th 354 [14 Cal.Rptr.2d 441, 841 P.2d 961], it was held that this instruction should not be given absent substantial evidence of equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not. Further the instruction should not be given when it is undisputed that the defendant's claim is "based upon the victim's behavior after the defendant had exercised or threatened force, violence, duress, menace or fear of immediate and unlawful bodily injury on the person or another." Where the evidence is conflicting on that issue, the court must give this instruction, if as indicated there is substantial evidence of equivocal conduct, despite the alleged temporal context in which that equivocal conduct occurred. In such situation, the second bracketed paragraph [quoted above] should then be utilized.[26]
The evidence of consent is conflicting in this case, in that the victim testified that the defendant used force and the defendant testified that, not only did the victim consent, but she initiated some of the actions.
Assuming that Honeycutt was entitled to an instruction on mistaken belief of consent, the proposed instruction must correctly state the law.[27] Honeycutt's proposed instruction was not "technically deficient in form," as the dissent alleges, but an incorrect statement of the law when there is evidence that the "consent" was achieved *370 through threats, force and violence. Therefore, the district court did not err in refusing to give the instruction.

Prior sexual assault
Honeycutt moved to exclude the testimony of a prior sexual assault victim. The district court held a Petrocelli[28] hearing to determine the admissibility of the evidence. At that hearing, Honeycutt's former girlfriend testified that in 1997, Honeycutt had sexually assaulted her. She stated that he covered her nose and mouth and assaulted her vaginally and anally, and hit her on the head when she screamed. Honeycutt entered an Alford[29] plea to a charge of coercion, contending that the sexual intercourse was consensual. The district court concluded that if Honeycutt argued consent as a defense, the evidence would be admissible as probative of intent in light of the similarity of the crimes.
NRS 48.045(2) provides that evidence of other crimes is admissible, not to prove character, but for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In Williams v. State,[30] this court stated:
The crucial question in determining if a sexual assault has occurred is whether the act is committed without the consent of the victim, and the intent of the accused is relevant to the issue of consent or lack thereof. In the instant case, evidence of Williams' sexual misconduct with other persons was admitted as being relevant to prove his intent to have intercourse with the victim without her consent. This evidence was introduced after Williams admitted committing the act, but claimed to have done so with the victim's consent. By acknowledging the commission of the act but asserting his innocent intent by claiming consent as a defense, Williams himself placed in issue a necessary element of the offense and it was, therefore, proper for the prosecution to present the challenged evidence, which was relevant on the issue of intent, in order to rebut Williams' testimony on a point material to the establishment of his guilt.
The decision to admit or exclude evidence lies in the sound discretion of the district court, and such a decision will not be overturned absent manifest error.[31] In cases of joined charges, the district court may admit the evidence if it satisfies one of the requirements of NRS 48.045(2) as to one of the charges as long as the overall prejudicial effect is outweighed by the probative value.[32] The district court made the appropriate determinations for admissibility and properly instructed the jury that this evidence was to be considered for purposes of intent to commit sexual assault and not propensity to commit the crime. The district court did not abuse its discretion in admitting the evidence.

Prosecutorial misconduct
We agree with Honeycutt that there was an instance of prosecutorial misconduct; namely, the prosecutor choking Honeycutt on the stand as a demonstration of what happened to the victim. The action was clearly improper. Honeycutt testified on direct examination that the sexual assault could not have occurred as the victim had described it and gave an in-court demonstration with a neutral party to corroborate his story. On cross-examination, the prosecutor asked if he could do his own in-court demonstration. Upon receiving permission, he approached Honeycutt, placed his arm across Honeycutt's throat and began pushing hard. Honeycutt's eyes began watering after a few seconds and he began to choke. Defense counsel immediately objected and requested a mistrial. The district court sustained the *371 objection but denied the motion for a mistrial.
We can see absolutely no reason why a prosecutor would take such an action. The decision to physically assault a defendant while on the stand goes well beyond the accepted bounds of permissible advocacy. However, we will not reverse the convictions on this ground because Honeycutt consented to the demonstration, and there is no indication that the action prejudiced Honeycutt in any way. On the contrary, it would appear that it would have prejudiced the State rather than Honeycutt, and Honeycutt reacted in a way which reflected well on him, rather than in a way which would prejudice him. This is in marked contrast to the situation described in Hollaway v. State,[33] where a stun belt was activated during closing arguments in a murder trial. In that case, the implication to the jury was that the State regarded Hollaway as extremely dangerous. Here, because of Honeycutt's reaction, there was no implication that Honeycutt was anything other than a gentleman, and he suffered no prejudice. Because of Honeycutt's conduct, the prosecutorial misconduct in conducting the demonstration was harmless, and the district court appropriately denied Honeycutt's motion for a mistrial.
Honeycutt argues that some of the prosecutor's cross-examination of him was irrelevant, unduly salacious, and disrespectful. Aside from the fact no objection was made to most of the prosecutor's questions, considering the nature of the charges and the divergent accounts of the circumstances by the victim and Honeycutt, the detailed cross-examination does not demonstrate misconduct. Honeycutt alleges that much of the cross-examination was sarcastic, thereby denigrating him, but that does not appear from the record. Although the cross-examination of Honeycutt was extensive and detailed, the State is entitled to test the credibility of the defendant. Honeycutt correctly cites United States v. Rodriguez-Estrada[34] for the proposition that it is the prosecutor's obligation to desist from the use of pejorative language and inflammatory rhetoric. However, Honeycutt fails to point out any such pejorative language or inflammatory rhetoric during the cross-examination.
Honeycutt argues that numerous instances of prosecutorial misconduct in closing argument deprived him of a fair trial. He argues that the prosecutor vouched for the State's witnesses, while calling Honeycutt a liar, among other derogatory terms. This court has stated that it is improper argument for counsel to characterize a witness as a liar.[35] However, a prosecutor may demonstrate to a jury through inferences from the record that a defense witness's testimony is untrue.[36] A review of the prosecutors' closing arguments shows that all references to the defendant and witnesses were not name-calling or improper vouching for the credibility of witnesses, but rather the drawing of inferences from evidence at the trial.

CONCLUSION
We conclude that Honeycutt received a fair trial and affirm the judgment of conviction for one count of first-degree kidnapping, two counts of sexual assault, and one count of solicitation to commit murder.
AGOSTI, J., concur.
ROSE, J., dissenting.
The district court committed reversible error when it refused to sever the trial of the sexual assault and kidnapping charges from the solicitation of murder charge that occurred six months later. Because of this error, the refusal to give Honeycutt's consent instruction, and the prosecutorial misconduct that occurred during trial, I conclude that reversal is mandated.

Severance
Under NRS 173.115(2), a district court can join charges that involve acts close in time *372 and relate to a defendant's common scheme, plan or motive, or otherwise are tied to each other. But any prejudice the joinder would create should always be considered, and joinder of charges should be denied if it would be prejudicial to the defendant.[1] Failure to sever when clear prejudice is shown requires reversal of any conviction obtained.[2]
The crimes of sexual assault and kidnapping are completely different from the solicitation of murder charge that occurred six months later. They are not part of a common plan or scheme, the percipient witnesses are different, and they are connected only by one single threadthe victim is the same. We have held that two incidents involving social drinks at a particular bar followed by alleged sexual assaults could not be joined because forty-five days separated the incidents.[3] Based on this, I conclude that severance of the solicitation of murder charge against Honeycutt was mandated because this charge was not closely related to and did not involve a common course or scheme as the sexual assault and kidnapping charges.
But the greater problem created by the joinder of the sexual assault and kidnapping charges with the solicitation of murder charge was that Honeycutt was automatically forced to surrender his right to remain silent. Honeycutt had already gone to trial on the sexual assault and kidnapping charges, the jury could not reach a verdict, and a mistrial was declared. At trial, he had testified on his own behalf, thereby forever waiving his right to remain silent on these charges.[4] The sexual assault and kidnapping charges were set for retrial. Joining the solicitation of murder charge with the sexual assault and kidnapping charges to which Honeycutt had already waived his right to remain silent, created the impossible situation where Honeycutt had waived his right to remain silent to some of the charges but had not to others. The logical solution was to sever the charges for trial, but the district court rejected Honeycutt's request to sever.
At retrial, Honeycutt took the stand and testified that the sexual acts were consensual, but then tried to remain silent and not testify about the solicitation charges. The district court directed Honeycutt to testify to the facts of the solicitation charge. As the district court stated:
Mr. Honeycutt, you've waived any rights you have as to answering or not answering by taking the stand and testifying on your behalf. You are obligated under the law to answer the questions truthfully that have been presented to you. This is not a separate trial. This is one trial. Both issues are before the Court, so you have an obligation to answer those. If you choose to not answer those, then the Court is then obligated to strike your testimony, sir.
What the district court did not grasp was that Honeycutt's Fifth Amendment right to remain silent about the sexual assault charges was forever waived when he took the stand in the first trial, and his right remained waived in the second trial whether he testified or not.[5] The prosecution could have called him to the stand as an adverse witness to testify about the sexual assaults; or if Honeycutt refused to testify, the prosecutor could have had his prior testimony at the first trial read into the record.[6] The majority endorses, without the citation of any authority, this unique procedure of restoring an accused's privilege against self-incrimination after it has been previously waived.
The majority cites United States v. Dixon,[7] where the Seventh Circuit Court of Appeals stated that a severance is not required every time a defendant wants to testify to one charge and not to others. I heartily agree *373 with this general proposition, but the unique facts of this case must be considered. In Dixon, all charges were being brought to trial for the first timethe defendant had not already waived his Fifth Amendment right as to some of the charges.[8] The unique situation in this case makes the general proposition stated in Dixon inapplicable.
We have held that any substantial detriment to the defendant brought about by the joinder of charges requires severance of the charges, including the denial of the ability to introduce evidence critical to the defendant's defense.[9] The majority declares that no "unfairness" or detriment to Honeycutt has been demonstrated. I respectfully disagree and our prior case law does also. Compelling a defendant to surrender his Fifth Amendment right against self-incrimination seems like a pretty big detriment to me.
Even assuming that Honeycutt did not waive his right against self-incrimination at the first trial as the district court believed, I conclude that joinder of the charges was prejudicial to Honeycutt. In order to meet the charges of sexual assault and kidnapping, it was imperative that Honeycutt testify that the sexual acts were consensual. He had done so in the previous trial that resulted in a mistrial. The majority opines that there were other ways for Honeycutt to present a consent defense, but this is foolishness.[10] Clearly the primary way to show a consensual-sex defense is to have the accused testify to the consensual act. Further, the defendant should not be forced to use secondary, less persuasive evidence in meeting one charge in order to preserve his right to remain silent on the other charges.[11]
By failing to sever the charges, Honeycutt was forced to surrender his right against self-incrimination as to some charges in order to present his defense to the other serious charges. No defendant should be so compelled when the situation could be avoided by a severance of the charges for trial.

The failure to give Honeycutt's consent instruction
It is well established that a criminal defendant is entitled to an adequate instruction on the defense theory of the case, "no matter how weak or incredible the evidence supporting the theory may appear to be."[12] Recognizing this, the majority states that Honeycutt's proposed instruction on reasonable mistaken belief of consent must be given as long as there is evidence to support this theory. However, the majority concludes that the district court did not err in refusing Honeycutt's proposed instruction because it was an incomplete statement of the law which, according to the majority, equates to an incorrect statement of the law. I believe that the majority's conclusion, which basically requires a perfect instruction, is inconsistent with the underlying policy entitling a defendant to an instruction on the defense theory of the case.
We have required that the defendant's proposed instruction on the defense theory of the case must correctly state the law.[13] However, we have not required a perfect instruction. Such a requirement is inconsistent with our policy that a defendant is entitled to an instruction on his theory of the case even if the evidence supporting his theory is weak or slight. If the proposed instruction is poorly drafted, a district court has an affirmative obligation to cooperate with the defendant to correct the proposed instruction or to incorporate the substance of such an *374 instruction in one drafted by the court.[14] Indeed, the Court of Appeals of Mississippi has stated:
[T]he trial court cannot simply reject the poorly-drafted instruction, thus depriving the defendant of his defense, but the court has "the duty to make reasonable modifications of the requested instruction or, at the very least, to point out to [the defendant] wherein it may have been deficient and allow reasonable opportunity for correction."[15]
Here, Honeycutt's proposed instruction placed the district court on notice regarding the issue of reasonable mistaken belief of consent.[16] In addition, Honeycutt provided the district court with the legal authority in support of giving the instruction. The majority notes that Honeycutt omitted the bracketed portion of the proposed instruction, which was based on instruction 10.65 from the California Jury Instructions for Criminal Cases ("CALJIC"). In support of its conclusion that Honeycutt's proposed instruction was incomplete, and therefore an incorrect statement of the law, the majority cites to the comment to CALJIC 10.65. However, the comment does not require that the bracketed part be included when there is conflicting evidence, but instead suggests that it should be utilized in situations where there is conflicting evidence on the issue of consent. Because the bracketed part of CALJIC 10.65 is not required, I conclude that Honeycutt's proposed instruction was not an incomplete statement of the law and more significantly, I conclude that Honeycutt's omission does not equate to an incorrect statement of the law.
Even assuming that Honeycutt's proposed instruction was technically deficient in form, it was substantially correct. Honeycutt should be provided the opportunity to make any corrections to his proposed instruction, and not simply rejected based on an omitted portion, which is not required. Accordingly, I conclude that the district court's refusal to give Honeycutt's proposed instruction was erroneous, and thus reversal is mandated.

Prosecutorial misconduct
The instances of prosecutorial misconduct were pervasive and substantial. They ranged from a demonstration that resulted in the prosecutor choking Honeycutt, to the prosecutor vouching for a witness and commenting on which witnesses were telling the truth.
First, Honeycutt contended that the sexual-assault incident could not have happened the way the victim described, and an in-court demonstration was conducted with a neutral party. When the prosecutor began his cross-examination, he asked if he could do his own court demonstration. Upon receiving permission, he approached Honeycutt, placed his arms across Honeycutt's throat and pushed hard. Honeycutt's eyes began watering, and he began choking and coughing. Defense counsel objected, and the district court ordered the "demonstration" to stop. A subsequent motion for a mistrial was denied.
An accused who takes the stand runs many risks. One of them should not be that the prosecutor would physically assault him or her. Assaulting a defendant during trial is so prejudicial that it should be reversible *375 error.[17] In this case, the physical assault had two negative impacts on Honeycutt. First, the demonstration was by no means reliable in reenacting what happened, and the effects on Honeycutt could easily have been more a result of the prosecutor's aggression than an accurate depiction of what occurred. Second, it clearly showed the personal animus and bias the prosecutor had toward Honeycutt. We have often stated that a prosecutor should not show his personal animus toward a defendant before a jury.[18] The majority opines that Honeycutt consented to the assault, but what choice did Honeycutt have when the district court gave the prosecutor permission to proceed with the demonstration, and the prosecutor then used extensive force in conducting the demonstration.
In a recent case, Hollaway v. State,[19] the defendant Hollaway wore a stun belt that accidentally went off during closing arguments in a murder trial. Hollaway was sent writhing to the floor.[20] This court called the incident an "arbitrary and prejudicial factor" and reversed the case, in part, because of this incident.[21] Here, the intentional assault on Honeycutt was no less arbitrary and prejudicial. While the concerns of underscoring an accused's potential violence is not present in this case as it was in Hollaway, we do have the additional factors of an unreliable demonstration and an intentional assault against an accused by the State's representative. This incident introduced an arbitrary and prejudicial factor into the trial that made the trial result unreliable.
Next, in closing argument, the prosecutor stated that Honeycutt and one of his witnesses were the "kind of people" who need heavy security. He also stated that Honeycutt's witness was a liar, implied that the State's witnesses were more honest, vouched for the victim's credibility, and stated that Honeycutt was guilty. The prosecutor also argued facts that were not in evidence when he stated the reasons why Honeycutt approached David Paule to solicit the murder of the sexual assault victim.
It is improper for a prosecutor to vouch for the credibility of a witness.[22] It is also improper to brand a defendant as a liar, or accuse his witness of lying.[23] Further, it is improper to refer to the defendant in a derogatory manner,[24] and references should not be made to events or documents that were not in evidence.[25]
While objections to most of the prosecutor's improper comments were not made, we can consider multiple incidents of substantial error under the plain error doctrine.[26] In *376 light of the conflicting evidence regarding consent, I conclude that the multiple incidents of prosecutorial misconduct are sufficient to amount to reversible plain error.
In summary, I conclude that each of the above instances of errorseverance, failure to give Honeycutt's consent instruction, and prosecutorial misconductconstitute reversible error. In any event, I conclude that the cumulative error mandates this court to reverse and remand for a new trial.
Therefore, I respectfully dissent.
NOTES
[2] Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).
[3] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[4] U.S. Const. amend. V.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] Honeycutt alleged other assignments of error including: (1) eliciting Honeycutt's statements by a prison inmate without Miranda warnings and/or as a result of entrapment; (2) the State's failure to disclose exculpatory evidence; (3) biased and improper evidentiary rulings; (4) improperly threatening to strike a defense witness's testimony; and (5) giving an improper instruction on voluntary intoxication. We conclude that none of these assignments of error has merit.
[7] Middleton v. State, 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (citing Amen v. State, 106 Nev. 749, 756, 801 P.2d 1354, 1359 (1990)).
[8] Id.
[9] United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir.1976).
[10] United States v. Bronco, 597 F.2d 1300, 1302 (9th Cir.1979).
[11] Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir.1991).
[12] Abram v. State, 95 Nev. 352, 356-57, 594 P.2d 1143, 1145-46 (1979) (threats against witness relevant to consciousness of guilt).
[13] 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (quoting Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989)).
[14] U.S. v. Dixon, 184 F.3d 643, 646 (7th Cir. 1999) (quoting U.S. v. Alexander, 135 F.3d 470, 477 (7th Cir.1998)).
[15] Baker v. United States, 401 F.2d 958, 977 (D.C.Cir.1968).
[16] Middleton, 114 Nev. at 1108, 968 P.2d at 309 (quoting United States v. Wilson, 715 F.2d 1164, 1171 (7th Cir.1983)); United States v. Campanale, 518 F.2d 352, 359 (9th Cir.1975).
[17] The dissent argues that by testifying at his first trial, Honeycutt waived his Fifth Amendment right to remain silent. Despite the fact that Honeycutt testified at his first trial, the district court made clear that Honeycutt could choose not to testify at his second trial. The district court made clear that Honeycutt would be treated at the second trial as though he had never testified, thus, in effect reinstating his Fifth Amendment rights. The determination of whether to admit evidence is within the sound discretion of the district court, and that determination will not be disturbed unless manifestly wrong. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). The district court thus assured that the joinder of the charges would result in no fundamental unfairness. It cannot be a manifest abuse of discretion to refuse to admit evidence otherwise admissible in order to assure fundamental fairness.
[18] Holmes v. Gray, 526 F.2d 622, 626 (7th Cir. 1975).
[19] Id.
[20] Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989).
[21] Ruland v. State, 102 Nev. 529, 531, 728 P.2d 818, 819 (1986).
[22] See Owens v. State, 96 Nev. 880, 884 n. 4, 620 P.2d 1236, 1239 n. 4 (1980); see also Hardaway v. State, 112 Nev. 1208, 1210-11, 926 P.2d 288, 289-90 (1996).
[23] 108 Nev. 53, 56-57, 825 P.2d 571, 574 (1992).
[24] This is in contrast to our decision in Jenkins v. State that mistaken belief as to age is not a defense to statutory sexual seduction. 110 Nev. 865, 870-71, 877 P.2d 1063, 1066-67 (1994). Jenkins is not binding on our decision here since that crime was a strict liability offense in which knowledge of age is not an element of the crime. Id. Sexual assault is a general intent crime. Winnerford H. v. State, 112 Nev. 520, 526, 915 P.2d 291, 294 (1996). Thus, if a mistake is reasonable, it may be a defense to a charge of sexual assault. NRS 194.010(4).
[25] 1 California Jury Instructions, Criminal 10.65, at 828 (6th ed.1996).
[26] Id. at 830.
[27] Barron v. State, 105 Nev. 767, 776, 783 P.2d 444, 448 (1989); cf. Brooks v. State, 103 Nev. 611, 613, 747 P.2d 893, 895 (1987).
[28] Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).
[29] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[30] 95 Nev. 830, 833, 603 P.2d 694, 697 (1979) (citations omitted).
[31] Petrocelli, 101 Nev. at 52, 692 P.2d at 508; Tillema v. State, 112 Nev. 266, 269-70, 914 P.2d 605, 607 (1996).
[32] NRS 48.035(1).
[33] 116 Nev. 732, 742, 6 P.3d 987, 994 (2000).
[34] 877 F.2d 153, 159 (1st Cir.1989).
[35] Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1105 (1990).
[36] Id.
[1] See NRS 174.165(1).
[2] See Cross v. United States, 335 F.2d 987, 989 (D.C.Cir.1964).
[3] Mitchell v. State, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989).
[4] Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) (noting that when a defendant waives his right to remain silent at one proceeding, he has waived it for all subsequent proceedings).
[5] Edmonds v. United States, 273 F.2d 108, 112-13 (D.C.Cir.1959).
[6] Id.
[7] 184 F.3d 643, 646 (7th Cir.1999).
[8] Id. at 645.
[9] Buff v. State, 114 Nev. 1237, 1245, 970 P.2d 564, 569 (1998).
[10] See Cross, 335 F.2d at 989 ("Prejudice has consistently been held to occur when ... [joinder] embarrasses or confounds an accused in making his defense.").
[11] See United States v. Scivola, 766 F.2d 37, 43 (1st Cir.1985) (stating that a defendant may deserve a severance of counts where the defendant makes "a convincing showing that `he has both important testimony to give concerning one count and strong need to refrain from testifying on the other"' (quoting Baker v. United States, 401 F.2d 958, 977 (D.C.Cir.1968))).
[12] Brooks v. State, 103 Nev. 611, 613, 747 P.2d 893, 895 (1987).
[13] See Barron v. State, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989).
[14] See Echavarria v. State, 108 Nev. 734, 748, 839 P.2d 589, 598-99 (1992) (concluding that the district court did not err when it refused the defendant's proposed instruction but offered another instruction which incorporated the substance of the defendant's proposed deadly-weapon-enhancement instruction); see also U.S. v. Newcomb, 6 F.3d 1129, 1133 (6th Cir.1993) (noting that the district court is responsible for making the necessary alterations to the defendant's proposed instruction if it is technically deficient and that the legal error could not serve to eliminate the defendant's existing right to have the jury instructed on his theory of the case); People v. Nunez, 841 P.2d 261, 266 (Colo.1992) (en banc) (same).
[15] Miller v. State, 733 So.2d 846, 849 (Miss.Ct. App.1998) (quoting Anderson v. State, 571 So.2d 961, 964 (Miss.1990)).
[16] Cf. Barnes v. Delta Lines, Inc., 99 Nev. 688, 690 n. 1, 669 P.2d 709, 710 n. 1 (1983) (concluding that the requirements of NRCP 51 were met when the appellants provided the trial judge with a citation to relevant legal authority in support of giving their proposed instruction, which placed the judge on notice regarding the issues of law involved).
[17] See Crow v. State, 984 S.W.2d 260, 263 (Tex. Crim.App.1998) (Baird, J., dissenting).
[18] See Collier v. State, 101 Nev. 473, 480, 705 P.2d 1126, 1130 (1985) (concluding that the prosecutor telling the defendant he deserved to die in the presence of the jury was egregiously improper), modified on other grounds by Howard v. State, 106 Nev. 713, 719, 800 P.2d 175, 178 (1990).
[19] 116 Nev. 732, 742, 6 P.3d 987, 994 (2000).
[20] Id.
[21] Id.
[22] See Lisle v. State, 113 Nev. 540, 553, 937 P.2d 473, 481 (1997) (vouching for the credibility of a witness is impermissible because it invades the jury's function of assessing credibility); Yates v. State, 103 Nev. 200, 203, 734 P.2d 1252, 1254 (1987) ("Any expression of opinion on the guilt of an accused is a violation of prosecutorial ethics.").
[23] See Ross v. State, 106 Nev. 924, 927-28, 803 P.2d 1104, 1106 (1990) (holding that a prosecutorial statement that a defense witness is a liar is not a proper argument); Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988) (stating that it is improper argument to characterize a witness as a liar).
[24] See McGuire v. State, 100 Nev. 153, 157-58, 677 P.2d 1060, 1063 (1984) ("Disparaging comments have absolutely no place in a courtroom, and clearly constitute misconduct.").
[25] See Rippo v. State, 113 Nev. 1239, 1254-55, 946 P.2d 1017, 1027 (1997) (stating that a prosecutor's comment to the effect that interviews and "things" happened outside the courtroom were improper references to evidence not presented at trial); Williams v. State, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987) (noting that a prosecutor may not argue facts or inferences not supported by the evidence).
[26] Rowland v. State, 118 Nev. ___, ___, 39 P.3d 114, 118 (2002).