**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TODD M. HONEYCUTT, | No. 09-16758 |
| Petitioner - Appellant, | D.C. No. 2:06-cv-00634-RLH-RJJ |
| v. | |
| BILL DONAT, Warden and ATTORNEY GENERAL OF THE STATE OF NEVADA, | MEMORANDUM* |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted April 17, 2013
San Francisco, California

Before: NOONAN, O'SCANNLAIN, and N.R. SMITH, Circuit Judges.

Petitioner Todd M. Honeycutt appeals the district court's denial of his

petition for a writ of habeas corpus (the "Petition"). We affirm in part and reverse

in part.

---

  *  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

I

The Nevada Supreme Court reasonably applied clearly established federal law when it denied Honeycutt's prosecutorial misconduct claims. "A prosecutor's actions constitute misconduct if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "On habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

In this case, the Nevada Supreme Court reasonably concluded that the choking incident constituted misconduct, but did not prejudice Honeycutt. The relevant factors under *Brecht* demonstrate that the choking incident did not have a "substantial and injurious effect" on the outcome of Honeycutt's case. The record reveals strong evidence of Honeycutt's guilt. *See Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2003) ("This [is] not a case in which there was . . . 'a strong likelihood that the effect of the [misconduct] would be devastating to the defendant.'"). The choking incident was a brief episode and not part of a pattern of ongoing misconduct. Honeycutt's testimony (which the incident interrupted) was

2

not critical as Honeycutt claims—a fact underscored by Honeycutt's last minute decision to testify against counsel's advice. Further, the trial court sustained defense counsel's objection to the incident. *See Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). Thus, we cannot say that the Nevada Supreme Court unreasonably concluded that the choking incident was harmless.

The Nevada Supreme Court did not unreasonably apply *Darden* when it concluded that none of the prosecutor's other actions (individually or collectively) amounted to misconduct. We note that defense counsel failed to object to most of the other actions Honeycutt now claims were misconduct. Accordingly, the Nevada Supreme Court reasonably denied Honeycutt's prosecutorial misconduct claims.

## II

Even assuming that the trial court erred when it failed to instruct the jury on Honeycutt's alleged reasonable belief of the victim's consent, "[a] jury instruction that erroneously. . . omits an element of the offense is a non-structural constitutional error subject to harmless error review." *United States v. Anchrum*, 590 F.3d 795, 799 (9th Cir. 2009). "Under *Brecht*, an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, we conclude that there was a substantial and injurious effect or influence on

the verdict, or if we are 'left in grave doubt' as to whether there was such an effect." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

Here, Honeycutt failed to show that the jury would have accepted Honeycutt's alleged belief of the victim's consent, given the jury's rejection of Honeycutt's version of events and the lack of other supporting evidence. Thus, we cannot say that any alleged failure to instruct leaves us in "grave doubt" as to the propriety of Honeycutt's conviction. Accordingly, any alleged violation was harmless under *Brecht*.

III

The Nevada Supreme Court reasonably denied Honeycutt's ineffective assistance of counsel claim based on counsel's failure to proffer the correct belief of consent instruction. The Nevada Supreme Court invoked the "complete instruction" requirement for the first time in denying Honeycutt relief on direct appeal. *See Honeycutt v. State*, 56 P.3d 362, 368–69 (Nev. 2002). The Nevada Supreme Court overruled the requirement just three years later in *Carter v. State*, 121 P.3d 592, 595–96 (Nev. 2005). Honeycutt's counsel could not have known that failure to proffer the "complete instruction" would prompt the trial court to

4

reject it.   Thus, Honeycutt cannot show that counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

IV

The Nevada Supreme Court reasonably applied clearly established law when it denied Honeycutt's claim that joinder of his charges for trial violated his due process rights and right against self incrimination.  Honeycutt cites no Supreme Court case to support his theory that joinder of the charges violated his right against self-incrimination.  While he cites cases for the general rule that a defendant cannot be compelled to testify against himself, he fails to demonstrate that the trial court compelled him to testify.  Indeed, Honeycutt chose to testify over advice of counsel.  Thus, the Nevada Supreme Court did not unreasonably apply the Fifth Amendment's general prohibition against self-incrimination. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (alteration in original) (internal quotation marks omitted)).

Similarly, Honeycutt fails to show that joinder rendered his trial "fundamentally unfair," thereby violating his due process rights. *See Fields v. Woodford*, 309 F.3d 1095, 1110 (9th Cir. 2002), *amended by* 315 F.3d 1062 (9th

Cir. 2002). Evidence of the sexual assault and kidnapping was cross-admissible with the evidence of solicitation. *See id.* Further, the State's evidence on both sets of charges was strong, foreclosing any argument that evidence of the stronger charge would taint the jury's view of the weaker. *See id.* Thus, the Nevada Supreme Court reasonably denied Honeycutt's joinder-related claims.

V

The Nevada Supreme Court reasonably applied *Strickland* when it rejected Honeycutt's ineffective assistance of trial counsel claim arising from counsel's alleged failure to introduce exculpatory evidence. To overcome the presumption of adequate assistance, "a defendant must show that counsel failed to act 'reasonably considering all the circumstances.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (alteration omitted). In addition, the defendant must "prove prejudice," meaning that he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Here, counsel's failure to introduce allegedly exculpatory letters did not constitute deficient performance under *Strickland*. While Honeycutt claims that there "was no strategic reason for not introducing these letters," the record reveals that counsel could have reasonably decided not to introduce the letters. Honeycutt intended to invoke the Fifth Amendment and to refuse to testify regarding the

6

solicitation charge.  To preserve this right, counsel even advised defendant to refrain from testifying on the sexual assault and kidnapping charges.  Had counsel introduced the letters at trial, it would have opened Honeycutt up to cross examination on their content, defeating counsel's effort to avoid Honeycutt testifying.  Because Honeycutt cannot show that counsel failed to act reasonably given the circumstances, the Nevada Supreme Court reasonably denied his *Strickland* claim.[1]

## VI

We reject Honeycutt's claim of cumulative error.  Honeycutt fails to show that, taken together, the alleged errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

## VII

The Nevada Supreme Court unreasonably denied Honeycutt's *Massiah v. United States*, 377 U.S. 201 (1964), claim.  The Sixth Amendment did not bar the State's investigation of the solicitation charge, even though Honeycutt was

---

[1] The Petition raised two additional ineffective assistance of counsel claims. We do not address them, because Honeycutt has since conceded that they lack merit.

7

previously charged with the related offenses of sexual assault and kidnapping. *See McNeil v. Wisconsin*, 501 U.S. 171, 175–76 (1991) ("The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime.]" (alterations in original) (quoting *Maine v. Moulton*, 474 U.S. 159, 179 (1985)). Nor did it bar the government from using Honeycutt's deliberately elicited statements as evidence of guilt on the solicitation charge.

But the Sixth Amendment did forbid the government from using deliberately elicited statements to incriminate the defendant on charges to which the right of counsel had already attached. *See Moulton*, 474 U.S. at 180. Applying this rule, we conclude that this case is indistinguishable from *Moulton*. Here, as in *Moulton*, the state elicited incriminating statements through an informant (and undercover agent) while the defendant was under indictment. *See id.* at 177 (the state "knew that [the defendant] would make statements that he had a constitutional right not to make to their agent prior to consulting with counsel"). Here, as in *Moulton*, the incriminating statements led to a new charge being filed against Honeycutt. Here, as in *Moulton*, the state used Honeycutt's deliberately elicited statements to incriminate him on charges to which his right of counsel had already attached.

We do not reach the issue of whether the violation of Honeycutt's *Massiah* right was harmless error. "Usually when the government fails to argue

8

harmlessness, we deem the issue waived and do not consider the harmlessness of any errors we find." *U.S. v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005) ("This makes perfect sense in light of the nature of the harmless-error inquiry: it is the government's burden to establish harmlessness, and it cannot expect us to shoulder that burden for it."). None of the exceptions to the harmless-error waiver rule applies here. *See id.* at 1100–01.

**AFFIRMED IN PART AND REVERSED IN PART**. The parties shall bear their own costs.

*Honeycutt v. Donat*, No. 09-16758
N.R. SMITH, Circuit Judge, concurring in part, dissenting in part

I agree with the majority's conclusions and join in Parts I through VI of their disposition. However, I write separately in dissent, because I disagree that the Nevada Supreme Court unreasonably applied *Massiah v. United States*, 377 U.S. 201 (1964), or *Maine v. Moulton*, 474 U.S. 159 (1985), when it denied Honeycutt's *Massiah* claim.

The majority rests its conclusion on its view that this case is indistinguishable from *Moulton*. Even a cursory reading of *Moulton* contradicts this view. In *Moulton*, the police wired an informant (one of the co-defendants) to record a pre-planned meeting between the informant and Moulton. 474 U.S. at 164-65. The police later admitted that they were aware that the informant and Moulton planned to discuss the charges already pending against Moulton. *Id.* at 165. During the meeting, the informant encouraged Moulton to engage in "a prolonged discussion of the pending charges . . . ." *Id.* While Moulton had previously suggested killing a witness, that plan was quickly dismissed during the conversation. *Id.* The state never charged Moulton with solicitation nor introduced evidence of solicitation. *Id.* at 167. Accordingly, the state used the evidence elicited only to prove charges already pending during the investigation

1

and crimes committed contemporaneously with the previously-charged crimes. *Id.* The Supreme Court concluded that the state "knowingly circumvent[ed]" Moulton's right to counsel and, thereby, violated Moulton's Sixth Amendment right. *Id.* at 180.

There is a difference in kind between this case and *Moulton* in terms of the police's investigation, the evidence obtained, and the state's use of the evidence in the two cases. Accordingly, *Moulton* bears only a superficial resemblance to this case. For *Moulton* to be "indistinguishable" as the majority claims, there would have to be several important factual changes. The majority's view would require that: (1) the state had used the informant to gather specific details of Honeycutt's rape of the victim; (2) the police knew, going into the investigation, that the informant would elicit these details; (3) the state had introduced those details at trial; (4) the state had failed to charge Honeycutt with solicitation; and (5) the state had failed to introduce any statements about the solicitation.

Of course, just the opposite occurred in this case. The state did not seek details of Honeycutt's rape of the victim during its investigation of Honeycutt's later conspiracy to kill the victim. The police, permissibly investigating this separate crime, *see McNeil v. Wisconsin*, 501 U.S. 171, 175-76 (1991), would have had no reason to expect details about the rape to come out of the investigation.

2

Indeed, no details did come forth, so no details of the previously charged crimes were introduced at trial. Instead, the investigation brought forth details of a second crime, solicitation, which were used at trial to prove that crime.

The majority, then, implicitly argues that anytime a second, separate crime shows consciousness of guilt of a previously charged crime, those two crimes cannot be tried together. No clearly established federal law sets forth this automatic severance rule. In fact, elsewhere, the majority holds that the Nevada Supreme Court reasonably rejected Honeycutt's severance claim. Even more importantly, *Moulton*, upon which the majority relies, says nothing about severance or the cross-admissibility of evidence, because the facts of that case did not implicate those issues. Thus, *Moulton* is distinguishable from this case, does not establish (much less clearly establish) the law that the majority seeks to impose upon the states, and cannot serve as the basis for relief under 28 U.S.C. § 2254(d).